

WWW.RIVKINRADLER.COM

926 RXR Plaza
Uniondale, NY 11556-0926
T 516.357.3000  F 516.357.3333

**KENNETH A. NOVIKOFF**
PARTNER
(516) 357-3110
ken.novikoff@rivkin.com

December 20, 2019

**VIA ELECTRONIC MAIL**
Magistrate Judge Cheryl L. Pollak
Eastern District of New York
225 Cadman Plaza East
Courtroom 13B - South
Brooklyn, New York 11201

Re:   *Fadlevich v. JD 34th Street, et. al.,* No.: 19-cv-04227

Your Honor:

The law firm of Rivkin Radler, LLP represents Defendants Gutman, Mintz, Baker & Sonnenfeldt, LLP and Eric Keilbach, ("Gutman"), in the above referenced action. Reference is made to Plaintiff's counsel letter dated December 13, 2019 ("Letter"). Succinctly, Plaintiff's counsel's filing is disingenuous.[1]

Critically, Plaintiff's counsel fails to advise Your Honor that on November 14, 2019, in compliance with this Court's direction, Gutman produced **257** pages of documentation directly related to, *inter alia*, Gutman's involvement, as legal counsel for its client in its client's lawful efforts to collect on a valid monetary judgment entered against Plaintiff: (1) in the initial restraint of Plaintiff's funds deposited with Wells Fargo "(Wells"), and; (2) in what it believed was the subsequent release of these funds. *See, Exhibit "1."* Gutman respectfully submits that its significant production on November 14th adheres to both the spirit and intent of what I believed Your Honor directed Gutman to produce at the October 28, 2019 conference and precisely what I advised Plaintiff's counsel that Gutman would produce in my November 7, 2019 letter. *See,* Novikoff letter dated Nov. 7, 2019 [attached as Ex. "A" to Letter] ("[i]n accordance with and consistent with what we in good faith believe was the direction of Magistrate Judge Cheryl L. Pollak, the Law Firm Defendants will produce. . . [.]"

---

[1] Unfortunately, Gutman can't help but to speculate as to Plaintiff's counsel's motives with regard to this filing, inasmuch as he waited one month after Gutman's production to file this letter with the Court.

66 South Pearl Street          25 Main Street, Court Plaza North       477 Madison Avenue            2649 South Road
Albany, NY 12207-1534          Suite 501                                New York, NY 10022-5843      Poughkeepsie, NY 12601-6843
T 518.462.3000  F 518.462.4199  Hackensack, NJ 07601-7021              T 212.455.9555  F 212.687.9044  T 845.473.8100  F 845.473.8777
                                T 201.287.2460  F 201.489.0495



December 20, 2019
Page 2

Indeed, in addition to producing all correspondence from Plaintiff to Gutman in its possession, among the specific documents produced were:

- Gutman's December, 2018 communications with Plaintiff concerning his submission of sufficient proof that the funds being restrained were exempt (*see, Exhibit "2."*);
- Gutman's communication with New York City Marshal Ronald Moses in December, 2018, including its December 12, 2019 e-mail instructing "Ira" from Marshal Moses' office **not to release** to Gutman the restrained funds in his possession because Plaintiff provided proof of possible exemption status (*see, Exhibit "3"*);
- in furtherance of Gutman's instructions, Marshal Moses' communication with Wells on December 19, 2018, which was forwarded to Gutman, advising Wells that **"[y]ou are hereby authorized and directed to release the execution heretofore served upon you in the above matter"** (*see, Exhibit "4"*);
- the Information Subpoenas served by Gutman on Wells in 2019, all returned by Wells to Gutman and each one advising Gutman that no funds belonging to Plaintiff were being restrained, (**"below threshold"**), (*see, Exhibit "5,"*)[2], and;
- Gutman's letter to Wells in July, 2019, instructing Wells to release any restrained monies belonging to Plaintiff (*see, Exhibit "7."*).[3]

To my recollection, there was absolutely no discussion at the October 28 conference and no direction by Your Honor, addressing anything being done by Gutman while the discovery stay issue was being briefed and considered, other than making a good faith production of non-"intent" documents in its file concerning Plaintiff.[4] Further, while Plaintiff's counsel has wrongfully attacked Gutman, (as he takes every opportunity to do), he fails to note his own failure to provide any initial documentation to Gutman concerning his client's "actual damages," which would necessarily include documents addressing Plaintiff's central claim against Gutman – that Gutman presently possesses some and/or all of Plaintiff's restrained funds, a claim that Gutman categorically denies.

---

[2] Contrast this with the returned November, 2018 Information Subpoena, wherein Wells advised Gutman that $23,964.89 was being restrained. *See, Exhibit "6."*

[3] Gutman is at a complete loss to understand Plaintiff's counsel's reasoning in incorrectly advising Your Honor that Gutman has stated that "even if there is not a stay in discovery, it will not produce documents regarding the Plaintiff, the collection lawsuit, the putative judgment, or attempts to collect the putative judgment." *See, Letter, at p. 2.* Not only is Plaintiff's statement untrue and nowhere found in my November 7 letter, but these categories of documents are exactly what Gutman provided Plaintiff within its 257 page production.

[4] Gutman also fails to understand Plaintiff's counsel's grievance concerning Gutman's position with regard to not producing documents, to the extent any exist, protected by the various attorney-client privileges. While not accurately quoting from my letter, if merit discovery is not stayed and documents that fall within these privileged categories exist, Gutman will certainly comply with its obligations to provide a privilege log.



December 20, 2019
Page 3

In this regard, Plaintiff served non-party subpoenas on various City Marshals, *see, Exhibit "8,"* including City Marshal Moses, as well as on Wells. *See, Exhibit "9."* Gutman is independently aware[5] that Marshal Moses[6] provided documents in response to Plaintiff's subpoena; none of which, however, reflect that he possesses any of money belonging to Plaintiff.

As for Wells, Plaintiff's counsel will not even tell me if Wells responded to the subpoena and, to the extent they have, has refused to turn over any documents that Wells may have produced. *See, Exhibit "10."* Based upon its analysis of other documentation initially received from Plaintiff and produced on November 14, as well as the documents highlighted herein, it is Gutman's good faith belief that if any money has not been returned to Plaintiff, it was due to a Wells internal error, and that Wells' response to the subpoena would show that. *See, Ex. 9,* [at *Ex. C,* "Deposition By Written Questions," ## 4, 5 and 6].

Indeed, Gutman finds it is suspicious that Plaintiff's counsel has taken the position noted above with regard to providing information concerning Wells' response. If Wells' response was innocuous, or even beneficial to Plaintiff, (or, conversely, detrimental to Gutman), why not provide that to Gutman? However, if Wells has turned over exculpatory documentation (concerning Gutman) as to which entity has Plaintiff's monies, as Gutman believes it has based upon Plaintiff's counsel's unreasonable position, Plaintiff's counsel has not only the obligation to advise this Court of its incorrect representation, but to produce it to Gutman as part of its Initial Disclosures.[7]

Last, Gutman is compelled to respond to Plaintiff's counsel assertion that it is Gutman that is "running up attorney's fees … and … delaying justice for our client … [.]" This statement is, simply, stunning in its audacity. Even though Gutman believes it has very viable defenses to Plaintiff's FDCPA claim and could very likely prevail at trial on liability, it has nevertheless proposed to concede to a §1692(e) violation, agree to the imposition of the statutory maximum penalty of $1,000, immediately proceed to discovery on Plaintiff's actual damages, if any, suffered, and thereafter have an expedited trial on damages. Gutman has made its proposal because it knows that FDCPA §1692(e) is a strict liability statute, that a single unintentional mistake can lead to liability and if it should not prevail after extensive merit discovery, motion practice, trial, post-trial motions and appeal, not only would defense counsel have to be paid substantial fees, but Gutman would be responsible for

---

[5] Marshal Moses, at my written request, served me with a copy of what he presumably provided Plaintiff.
[6] Gutman, upon information and belief, had no involvement with the other City Marshals concerning the restraint of monies at Wells.
[7] If Plaintiff is telling the truth about not receiving any of the monies initially restrained by Wells and then released to Marshal Moses, then either Wells, Marshal Moses or Gutman possesses Plaintiff's funds. Through documentation produced, *see, Exhibits "3," "4" and "5," infra,* it is clear Gutman never came into its possession.



December 20, 2019
Page 4

Plaintiff's counsel's attorney's fees, which given the manner in which Plaintiff's counsel litigates, will likely be 100 fold any actual damages suffered by Plaintiff.

Critically, Gutman submits that if Plaintiff's counsel cared one bit about his client and the expedited recovery of monies he claims "[P]laintiff needs to survive,"[8] then one would reasonably expect him to advise his client to accept Gutman's proposal and move immediately to the damage phase of this action. Instead, Plaintiff's counsel opposes Gutman's proposal and for one simple and undeniable reason – he wants to run up the legal fees so that while his client's recovery of "actual damages," if any, <u>will</u> <u>not</u> <u>change</u> with the passage of time, Plaintiff's counsel's monetary recovery will explode exponentially.[9]

Respectfully submitted,

RIVKIN RADLER LLP

*Kenneth A. Novikoff*

Kenneth A. Novikoff

KAN/sme

---

[8] **Plaintiff's counsel has even refused to provide me with a settlement demand, notwithstanding my request!**
[9] Similarly, Plaintiff's counsel's conduct in *Calixto*, which he brings up in the Letter, contradicts his cries for speedy justice for his client. In *Calixto*, Plaintiff's counsel: (1) opposed my client's concession of liability (Dkt## 36 and 37); (2) moved to reconsider Magistrate Judge Gold's ruling staying meet discovery (Dkt#44), and; (3) appealed Magistrate Judge Gold's ruling to Judge Brodie. (Dkt#54). Plaintiff's counsel's conduct is the <u>only</u> reason that a trial on actual damages in *Calixto* has not yet occurred and, to the extent that the *Calixto* plaintiff suffered any actual damages, he is the <u>only</u> reason why she has not yet been compensated.