# AHMAD KESHAVARZ
*Attorney at Law*

---

16 COURT ST., 26TH FLOOR　　WWW.NEWYORKCONSUMERATTORNEY.COM　　Telephone: (718) 522-7900
BROOKLYN, NY 11241-1026　　E-mail: ahmad@NewYorkConsumerAttorney.com　　Fax: (877) 496-7809

October 25, 2022

**VIA ECF**
Magistrate Judge Marcia M. Henry
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

  Re: **Reply in Support of Plaintiff's Motion to Lift Discovery Stay**
    *Fadlevich v. JD 34th Street Realty, LLC,* **No. 1:19-cv-04227-DG-MMH**

Dear Judge Henry:

  This firm represents Plaintiff Mark Fadlevich in the above referenced action alleging violations of the FDCPA and related statutes.

  While Gutman Defendants are all too eager to make personal attacks against Mr. Fadlevich[1] and his counsel[2], notably absent from their Opposition [Dkt. No. 85, hence "Defs. Opp."] is any refutation of either their egregiously deceptive conduct towards Plaintiff or that this conduct is done as the debt collector's standard practice (other than an empty dismissing of the allegations in *Crespo* as "irrelevancies"). Gutman Defendants do not deny that they restrained and garnished Plaintiff's funds and ignored the four notices over five months of indisputable documentary evidence that the funds were entirely statutorily exempt, and then two additional times garnished even more exempt funds, all for the purpose of attempting to retain funds from an exempt source and in hopes that Plaintiff, residing in Alabama and suffering from a significant disability, would not be able to do any more than protest. Gutman Defendants do not deny that, in total from November 21, 2018 to July 15, 2019 (236 days), Defendants restrained anywhere from $7,519.68 to $25,042.08 of Mr. Fadlevich exempt funds despite his four written notices that the money was exempt. Gutman Defendants do not deny that even after the return of part of the first restraint by Marshal Moses on December 20, 2018, GMBS was restraining between $7,519.68 and $15,661.12 for 209 days until finally releasing the money on July 17, 2019. And Gutman Defendants do not deny that Mr. Fadlevich is still short of $500 in exempt funds due to the bank fees caused by Defendants.

---

[1] Gutman Defendants have made clear that they seek to impugn Plaintiff's character by characterizing him as financially irresponsible, as a "deadbeat", and questioning his purchases. These kind of clearly prejudicial claims have no bearing on FDCPA liability and damages, particularly when Gutman Defendants have admitted liability. "No section of the [FDCPA] requires an inquiry into the worthiness of the debtor, or purports to protect only deserving debtors." *See Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.*, 111 F.3d 1322, 1330 (7th Cir. 1997)

[2] Gutman Defendants claim, without any citation of specific text, that "Plaintiff's counsel falsely lays the length of the litigation of this action at the feet of the Gutman Defendants." This is clearly referring to an opinion, rather than a fact which can be declaratively true or false. Gutman Defendants yet again waste the time of this Court and of Plaintiff with these spurious accusations.

Gutman Defendants argue allowing discovery will (1) substantially delay resolution of an adjudication of actual damages, (2) not prevent any prejudice against Plaintiff, (3) allow state law claims to predominate over the FDCPA "actual damage" issue, and (4) prejudice Gutman Defendants' defense to Plaintiff's claims of actual damages. None of these arguments are meritorious, and accordingly this Court should grant Plaintiff's Motion and allow discovery on his state law claims and 120 days from the lift of the stay to complete the discovery.

1. <u>Delay of resolution of adjudication of actual damages is not relevant as to whether discovery should be stayed.</u>

Contrary to Gutman Defendants' argument that "addressing the propriety of such discovery is not necessary for the purposes of this motion," it is precisely what is necessary to consider when evaluating this Motion under Rule 26(c). *See e.g. Ellington Credit Fund, Ltd. v. Select Portfolio Servs., Inc.,* No. 8 CIV. 2437 (RJS), 2009 WL 274483, at *1 (S.D.N.Y. Feb. 3, 2009) (evaluating factors such as "the breadth of discovery sought, and the burden that would be imposed on the parties responding to the proposed discovery"). What is not necessary to consider when evaluating this Motion is the "period of time <u>the recovery</u> [original emphasis] by his client, if successful, of his actual damages." Defs. Opp., p. 3. Gutman Defendants cite to no authority that holds this Court should consider this as a factor in determining whether to lift a discovery stay.

Gutman Defendants make a number of other claims in this section that are baseless. First, he attacks "Plaintiff's counsel own 'pattern and practice' in terms of litigating discovery disputes." Beyond the impropriety of attacking Plaintiff's counsel, Gutman Defendants fail to cite to any examples of this alleged "pattern and practice," presumably because to do so would allow Plaintiff to differentiate or rebut those examples, or the results of past appeals by Plaintiff's counsel (*see e.g. Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP,* 875 F.3d 128 (2d Cir. 2017).

Beyond the sour grapes over past appeals, Gutman Defendants' speculation as to breadth and burden is empty conjecture, presuming that Plaintiff's counsel is seeking a 120-day period in bad faith since "it is simply inconceivable, respectfully, that such discovery would be concluded in anywhere close to four months." Defs. Opp., p. 2. The only material basis for this statement is Gutman Defendants' own promise to "vigorously challenge the anticipated overbroad and an unwarranted intrusion into its business practices" before that discovery has even been allowed. Notably however, Plaintiff's Motion carefully laid out the discovery (Dkt. No. 83, pp. 8-10), including depositions of Defendants, deposition of Gutman employee Gary Thigpen, and production of account notes – none of these are addressed by Gutman Defendants, who would rather attack imagined discovery phantoms to justify their threat to run up fees fighting discovery tooth and nail.

Lastly, Gutman Defendants also levy another odd and irrelevant threat to assert a third-party claim against Wells Fargo Bank. The nature of this claim, even if it will be contractual or tort, is unaddressed, as is how Gutman Defendants will argue that they should be permitted to amend their answer to add a third-party claim which they presumably could have asserted in their original Answer on September 19, 2019.

2. <u>Plaintiff would suffer enormous prejudice if denied an opportunity to assert his claim for punitive damages alongside his actual damages.</u>

2

Gutman Defendants argue that Plaintiff has not and will not suffer any prejudice from the continuation of the stay because "Plaintiff has <u>always</u> [original emphasis] had, since the commencement of this action, the ability and opportunity…to withdraw his state law claims in this venue and file them in the appropriate New York State Supreme Court." Gutman Defendants continue this argument despite Plaintiff having amended this action to bring the state law claims under diversity jurisdiction, as well as supplemental jurisdiction. *See* Dkt. No. 64, ¶ 2. In other words, the resolution of Plaintiff's FDCPA claim will not inherently lead to dismissal of the state law claims under 28 U.S.C. § 1367(c)(3).

How Gutman Defendants believe that Plaintiff could bring his state law claims for the same exact deceptive conduct against Gutman Defendants without "material overlap" is unclear. Punitive damages are merely a multiplier of actual damages – even if Plaintiff were to bring his state law claims in state court, it would require him to prove the same deceptive conduct (restraining exempt Social Security funds and refusing to release them) and the same actual damages (both his garden variety emotional distress and his migraines and seizures), as well as the willfulness needed to establish punitive damages.

Notably, Gutman Defendants ignore the pertinent directive of Judge Pollak's Order (Dkt. No. 47, p. 12): "plaintiff's demonstration of what, if anything, he could obtain in damages under the state law claims beyond his 'actual damages.'" Plaintiff laid this out clearly in the Motion: punitive damages, via either GBL § 349 or conversion, that could double the actual damages. Dkt. No. 83, pp. 4-8. Gutman Defendants do not deny that such additional relief is possible – in fact, in this section, they even appear to assert that it is possible, just that this is not the appropriate venue for it. Simply put, Plaintiff would be enormously prejudiced by bifurcating his claims allowing punitive damages from his FDCPA claim (for which Gutman Defendants admitted liability) – they arise from the same conduct, and under both supplemental and diversity jurisdiction, should be tried together.

> 3. <u>Gutman Defendants are simply wrong that punitive damages are disconnected from actual damages – to the contrary, they are necessarily interconnected.</u>

As stated above, Plaintiff's punitive damages would be a multiplier of his actual damages, and thus are necessarily connected to his actual damages. But just as importantly, the harm that Gutman Defendants caused Mr. Fadlevich is an important part of the analysis for determining both whether he is entitled to punitive damages and what the multiplier should be. As noted in the Motion, *Randi AJ v. Long Island Surgi-Ctr.,* 46 A.D.3d 74, 82 (Sup. Ct. Second App. Div. 2007) held that determinations of punitive damages must "take into account the importance of the underlying right." What made Gutman Defendants' conduct towards Mr. Fadlevich harmful, that they took his exempt Social Security funds that were his sole source of income, is also what makes it so egregious and undermining of the public policy of Social Security.

The state law claims could not "overwhelmingly predominat[e] over the FDCPA" because they arise from the same deceptive conduct and led to the same actual damages. Gutman Defendants appear to be alluding to substantial predomination of state law claims brought under supplemental jurisdiction under 28 U.S.C. § 1367(c)(2) – but again, the state law claims are now brought under diversity jurisdiction as well as supplemental jurisdiction, so this argument is moot. *See* Dkt. No. 64, ¶ 2.

4. <u>Gutman Defendants argue that they will be prejudiced by their own admission to FDCPA liability – this is immaterial to this Motion.</u>

Gutman Defendants argue that they will be prejudiced by their own admission to FDCPA liability. Even assuming this is true, that would be due to Gutman Defendants' own freely made decision, not the lift of a stay of discovery. Gutman Defendants reveal their hand – as Plaintiff has argued from the beginning of this case, they are not interested in actually conceding liability to the conduct alleged by Plaintiff but rather have attempted to use a concession of liability to strategically limit liability as to other claims arising from the same conduct and the same actual damages.

Only achieving a stay of discovery rather than the full bifurcation of claims they had been hoping for, Gutman Defendants now seek a *de facto* bifurcation by arguing for the discovery stay to remain in place through a verdict on actual damages on the FDCPA claims. In support, they make the circular argument that their admission of FDCPA liability that triggered the stay of discovery requires discovery to remain stayed. Simply put, Gutman Defendants have made their bed of FDCPA liability and now they must lay in it, regardless of how it may influence a jury's opinion as to their conduct being willful and warranting punitive damages.

## **CONCLUSION**

Accordingly, Plaintiff requests a lift of the stay of discovery on his state law claims and 120 days from the lift of the stay to complete the discovery.

Respectfully,

/s/

Ahmad Keshavarz