UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
———————————————————————X

MARK FADLEVICH,

               Plaintiff,                        **<u>MEMORANDUM & ORDER</u>**

   -against-                           19-cv-4227 (NRM) (MMH)

JD 34TH STREET REALTY LLC,
GUTMAN, MINTZ, BAKER &
SONNENFELDT, LLP, and
ERIC KEILBACH,

               Defendants.

———————————————————————X

**NINA R. MORRISON**, United States District Judge:

     Plaintiff Mark Fadlevich brings claims against Defendants Gutman, Mintz, Baker & Sonnenfeldt, LLP ("GMBS") and GMBS attorney and partner Eric Keilbach (collectively, the "Gutman Defendants"), as well as Defendant JD 34th Street Reality LLC ("JD"). He asserts claims for violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*., as well as under New York General Business Law ("NYGBL") § 349 and common law conversion against the Gutman Defendants. Against JD, Plaintiff asserts claims for violations of the New York Exempt Income Protection Act ("EIPA"), NYGBL § 349, and common law conversion. Before the Court are Plaintiff's, the Gutman Defendants', and JD's motions for summary judgment. The Gutman Defendants moved for partial summary judgment as to the state claims against them. JD moved for summary judgment on the claims against them as well as in favor of its third, fourth, and sixth affirmative defenses and its first crossclaim

1

for indemnification.  Plaintiff moved for summary judgment on liability against JD and Gutman Defendants.

For the reasons that follow, Plaintiff's motion is denied in its entirety, and the Gutman Defendants' and JD's motions are granted in part and denied in part.

## BACKGROUND

This case stems from a series of events concerning the restraining of Plaintiff's exempt social security funds while the Gutman Defendants were attempting to collect on a judgment for Plaintiff's nonpayment of rent.  The Court has taken the facts set forth below from the parties' depositions, affidavits, and exhibits, and from the parties' separate Statements of Material Fact submitted pursuant to Local Civil Rule 56.1.

### I.  Plaintiff's Social Security Award and Underlying Judgment

Plaintiff was a tenant of an apartment in a building located at 30-78 34th Street in Astoria, New York beginning sometime around January 2014.  Declaration of Kostas Koutsothanasis, ECF No. 113-3 ("Koutsothanasis Nov. 2023 Decl.") ¶¶ 2, 6. Defendant JD held an ownership interest in the property until on or about May 27, 2015, when it transferred its interest in the property to nonparty JE 34th Street Realty LLC ("JE").  Declaration of Kostas Koutsothanasis, ECF No. 128-1 ("Koutsothanasis Dec. 2023 Decl.") ¶ 3; Pl.'s Exhibit K, ECF No. 122-11, at 1.  After that date, nonparty JE was the owner of the property.  Koutsothanasis Dec. 2023 Decl. ¶¶ 3, 5; Pl.'s Exhibit K, ECF No. 122-11, at 1.  Both JD and JE use Douglaston Realty Management Corp. ("Douglaston") to manage their properties. Koutsothanasis Dec. 2023 Decl. ¶ 1.  Through Douglaston, both JD and JE have hired

2

GMBS for various tenant collection matters. Koutsothanasis Nov. 2023 Decl. ¶¶ 11, 18; Koutsothanasis Dec. 2023 Decl. ¶¶ 10–12.

In March 2016, nonparty JE — via nonparty counsel — initiated an action in Queens County Civil Court against Plaintiff for failure to pay rent. Koutsothanasis Nov. 2023 Decl. ¶ 7; Gutman Defs.' Exhibit 1, ECF No. 112-1. The action was captioned *JD 34th Street Realty LLC v. El Roy Red, et. al.*, bearing the names of JD and of Plaintiff's co-tenant, respectively. Koutsothanasis Nov. 2023 Decl. ¶ 7 & n.1; Gutman Defs.' Exhibit 1, ECF No. 112-1. On August 26, 2016, Defendant JD obtained a judgment of $13,785 against Plaintiff, even though nonparty JE was the owner of the property.[1] Koutsothanasis Nov. 2023 Decl. ¶ 8; Gutman Defs.' Exhibit 1, ECF No. 112-1. At the time that judgment was entered, the Gutman Defendants were not JE's attorneys. *See* Pl. Resp. to Gutman Defs 56.1 ¶ 2, ECF No. 124. Plaintiff was evicted on January 12, 2017. Koutsothanasis Nov. 2023 Decl. ¶ 9.

In October 2017, nonparty JE transferred its files to GMBS and asked it to represent it in collecting the judgment against Plaintiff for unpaid rent. *Id.* ¶ 10. Upon receiving the files, a court runner from GMBS retrieved the judgment, and Defendant Eric Keilbach, an attorney and partner at GMBS, reviewed the file and underlying judgment. Pl.'s Exhibit B ("Keilbach Dep."), ECF No. 122-2, at 40. He did

---

[1] Neither Gutman Defendants nor Plaintiff dispute that it was an error that the judgment was obtained on behalf of Defendant JD instead of nonparty JE. *See* Pl. Resp. to JD 56.1 ¶ 7, ECF No. 124, at 35; Gutman Defs.' Resp. to JD 56.1 ¶ 7, ECF No. 116-1, at 2. *See also* Pl.'s Exhibit B ("Keilbach Dep.") 155:13–17, ECF No. 122-2, at 39 ("[F]or some reason the judgment was entered under JD in the underlying housing court action . . . that was done by a different attorney, even though at the time JE . . . was the proper landlord.").

not notice that the judgment was entered on behalf of Defendant JD instead of nonparty JE.  Keilbach Dep. at 40.  GMBS entered its appearance in the Queens state court action on October 12, 2017.  Gutman Defs.' Exhibit 2, ECF No. 112-2; Koutsothanasis Nov. 2023 Decl. ¶ 10.

In 2014 and 2015, Plaintiff applied for social security disability benefits and Supplemental Security Income (SSI).  *See Fadlevich v. Comm'r of Soc. Sec.*, No. 15-CV-6943 (RRM), ECF No. 16.  After his claims were denied in 2015, Plaintiff appealed the denial, and on December 28, 2016, a court in this District issued an order reversing the denial and ordering further administrative proceedings.  *Id.*  Through a letter dated August 21, 2018, the Social Security Administration informed Plaintiff that he would soon receive a check for $33,626.00 because he was owed that amount in past due benefits from July 2014 through June 2018.  Pl.'s Exhibit V, ECF No. 122-22.

No money paid under the Social Security Act "shall be subject to execution, levy, attachment, garnishment, or other legal process."  42 U.S.C. § 407 (a).  In addition, United States Treasury Department regulations provide that financial institutions must allow an account holder to maintain a "protected amount," which is the lesser of the sum of all benefit payments posted to the account in the last two months, or the balance in an account when the account review is performed.  31 C.F.R. §§ 212.3, 212.6.  Moreover, under New York regulations, judgment creditors (here, the Gutman Defendants) and judgment debtors (here, Plaintiff) must follow specific processes for restraining funds and disputing the restraining of funds if those funds

are exempt. *See* N.Y. C.P.L.R. §§ 5222, 5222-a (describing restraining notices and the service of notices and procedure for claims of exemption).

## II. GMBS's Collection Practices

GMBS is a full-service landlord-tenant/real estate law firm in New York with around 100 employees and a collections department of about 15 employees. Pl.'s Exhibit A ("Keilbach *Crespo* Dep."), ECF No. 122-1, at 5, 7, 13; Keilbach Decl. ¶¶ 3, 4, ECF No. 120-3.[2] Gary Thigpen is an account representative at GMBS in the collection department and is supervised by Robert Brust, who is also in GMBS's collection department. Pl.'s Exhibit C, ECF No. 122-3 ("Thigpen *Crespo* Dep."), at 3–5. Neither Thigpen nor Brust are attorneys. *Id.* at 3, 5; Keilbach *Crespo* Dep. at 9–10. Brust reports to Defendant Eric Keilbach, a senior partner at GMBS, and oversees the collection department. Keilbach *Crespo* Dep. at 4, 10. Brian Chiantella is a paralegal in the collections department. *Id.* at 9.

Most of the judgments that GMBS collects on are on behalf of its property management clients for commercial and residential rental arrears, with more than half coming from residential arrears. Keilbach *Crespo* Dep. at 10–11. The only information a collector needs to initiate a restraining notice is a file number. *See* Pl.'s Exhibit T, ECF No. 122-20 ("Thigpen Dep."), at 4. Bank restraints are generated with Keilbach's signature already digitally applied to them. Keilbach Dep. at 19; Thigpen Dep. at 5. After a collector generates a bank restraint, it is then given to another employee to be mailed to the bank. Thigpen Dep. at 4.

---

[2] All page references use ECF pagination except where noted.

When GMBS receives an exemption claim form from a consumer, collectors noted the claims in the file and then requested that an attorney review them. Thigpen Dep. at 3.  Only an attorney can make the decision to release a restraint on a bank account based on an exemption claim form. Keilbach Dep. at 8; Thigpen Dep. at 3.  Keilbach estimated that he likely reviewed no more than 50 exemption claim forms in 2018.  Keilbach Dep. at 6.  If an attorney decided there was a "good faith basis" to challenge a consumer's contention that his funds were exempt, GMBS's practice was to have outside counsel review the exemption before making a motion to challenge the exemption.  Keilbach *Crespo* Dep. at 24.

## III.    The Gutman Defendants' Collection Efforts

### A.    November 2017 through January 2019

In November 2017, GMBS served Wells Fargo with an information subpoena and restraining notice ("information subpoena" or "restraining notice") regarding Plaintiff's bank account.  Gutman Defs.' Exhibit 4, ECF No. 112-4.  Wells Fargo returned the restraining notice to GMBS, confirming that Plaintiff had a bank account with Wells Fargo and informing GMBS that no funds were restrained because Plaintiff's "account [was] below threshold."  *Id.*  In April 2018, Gutman served Wells Fargo with another restraining notice regarding Plaintiff's bank account. Gutman Defs.' Exhibit 6, ECF No. 112-6; Pl.'s Exhibit R, ECF No. 122-18. Wells Fargo returned the restraining notice to GMBS, advising GMBS again that no funds were restrained since the amount in the account was "Under Threshold."  *Id.* In addition, Wells Fargo noted that there was a deposit into the account with the

description "SSI TREAS 310 XXSUPP SEC ADDRESS: N/A," indicating that there were exempt Social Security funds in the account.  *Id.*

On November 16, 2018, GMBS served Wells Fargo with another information subpoena and restraining notice regarding Plaintiff's bank account.  Gutman Defs.' Exhibit 7, ECF No. 112-7.  The restraining notice was sent because Plaintiff's account was included in a list of accounts sent by GMBS collector Robert Brust for GMBS collector Gary Thigpen to execute on.  Pl.'s Exhibit Y, ECF No. 122-25, at 1, 3.  Neither Brust nor Thigpen are attorneys.  Thigpen *Crespo* Dep. at 3, 5; Keilbach *Crespo* Dep. at 9–10.  Wells Fargo returned the information subpoena and advised GMBS that money was restrained by indicating "Funds Held."  Gutman Defs.' Exhibit 7, ECF No. 112-7.  GMBS received the notice on December 3, 2018.  Gutman Defs.' Exhibit 8, ECF No. 112-8.

On December 4, 2018, Plaintiff called GMBS and told Thigpen that the money that was restrained was from his Social Security payments (and therefore exempt from collection).  *See* Gutman Defs.' Exhibit 9, ECF No. 112-9 (noting Plaintiff's statement that money "in the account [was] from disability").  That same day, Plaintiff emailed Thigpen the following:

> I've been advised to show you that the money in my account has all been recently accrued from winning a 4 year battle with disability and under NY State law all monies from Social Security are exempt from debt collection.  Which you can see for yourself in the included images below from my bank account deposits.  Except for a few small amounts, every penny I have is from my SSD back pay or current monthly payments.

Gutman Defs.' Exhibit 10, ECF No. 112-10, at 3; Pl.'s Exhibit BB, ECF No. 122-28, at 1.

7

The next day, on December 5, Thigpen emailed Plaintiff in response: "You are correct — The Law requires you must submit (proof)[.]  I need to see your last two months bank statements[.] Please provide the documents pdf format — or via fax." Gutman Defs.' Exhibit 10, ECF No. 112-10, at 3.[3]  Plaintiff responded on December 8 with a New York State exemption claim form and four months of bank statements. Gutman Defs.' Exhibit 11, ECF No. 112-11; Pl.'s Exhibit CC, ECF No. 122-29.

On December 11, 2018, after noticing that money was withdrawn from his account from the Marshal's office, Plaintiff emailed Thigpen again, alerting him that he had been calling "all over [his] office and can't seem to get anyone on the phone" and reminded him that he had submitted his exemption form a few days prior.  Pl.'s Exhibit GG, ECF No. 122-33.[4]  On December 12, Thigpen forwarded the email to Keilbach and wrote: "Please review below pdf bank statements when you can[.]" Gutman Defs.' Exhibit 14, ECF No. 112-14; Pl.'s Exhibit CC, ECF No. 122-29, at 1.

---

[3] If a debtor believes that any of the restrained funds are exempt from garnishment, he must complete an exemption claim form and send it to the bank and the creditor's attorney. N.Y. C.P.L.R. § 5222–a(c)(1).  The debtor may also send information establishing that the restrained funds are exempt, including, inter alia, "originals or copies of benefit award letters, checks, check stubs or any other document that discloses the source of the judgment debtor's income, and bank records showing the last two months of account activity." *Id.* § 5222–a(c)(4).  Upon receiving an exemption claim form, the creditor generally must instruct the bank to release the restrained funds if the exemption claim form "is accompanied by information demonstrating that all funds in the account are exempt." *Id.*

[4] As part of his submissions, Plaintiff included a copy of a check addressed to Marshal Moses, but the record is not clear if the check was ever deposited.  Pl.'s Exhibit II, ECF No. 122-35.  The Marshal's office says that it never received any monies from Wells Fargo related to Plaintiff's account.  *See* Ronald Moses Decl. dated December 11, 2023, ECF No. 120-4, ¶¶ 2–3.

Plaintiff emailed Thigpen again on December 12 and attached proof of a previous lump sum deposited to his bank from Social Security.  Gutman Defs.' Exhibit 15, ECF No. 112-15.  That same day, Thigpen forwarded the email to the office of Marshal Ronald Moses, the Marshal handling the restraint.  Thigpen advised Marshal Moses's office that the restrained funds were from social security and to put a "hold" on the account while he awaited attorney review.  *Id.*  He also stated that they "may need to refund the dollars." *Id.*  Keilbach was copied on the email to Marshal Moses's office.  *Id.*

On December 14, 2018, Plaintiff sent a letter to GMBS, Marshal Moses, and Wells Fargo in which he stated that GMBS "took $23,839.89 from [his] Wells Fargo Bank Account" and that "all" of the money in his bank account was "exempt money that [he had] received for social security disability."  Pl.'s Exhibit JJ, ECF No. 122-36, at 1. (emphasis omitted).  He attached a copy of the social security decision, his bank statements from July through November of 2018, his exemption claim form, and his emails with GMBS.  *Id.* at 1–2.[5]  Although Wells Fargo produced a copy of the letter during discovery in this case, GMBS has no record of receiving the letter.  Keilbach Dep. at 28.[6]

---

[5] Plaintiff refers to the December 14, 2018 letter as his "First Release Demand." *See* ECF Docket Label for Exhibit JJ, ECF No. 122-36.

[6] Plaintiff included certified mail receipts and copies of some proof of delivery for some letters to Marshal Moses, GMBS, and Wells Fargo.  *See* Pl.'s Exhibit KK, ECF No. 122-37.  However, it is not clear whether he included proof that GMBS received the December 2018 letter.  *Id.*  In fact, the only delivery receipt with a date that confirms that GMBS received a letter is for May 2019.  *Id.* at 1.  While there is no date on the proof of delivery, the tracking number on the proof of delivery corresponds with the tracking number on the receipt dated May 22, 2019.  *Id.*  There

On December 18, 2018, a representative from Marshal Moses's office emailed GMBS requesting an update on the "status of [GMBS's] [a]ttorney review" of Plaintiff's exemption claim. Pl.'s Exhibit MM, ECF No. 122-39. On December 19, 2018, Thigpen instructed Marshal Moses's office to release Plaintiff's account because the funds were exempt. Gutman Defs.' Exhibit 20, ECF No. 112-20, at 3 (message log noting "per aty (Gary), close and release. Exempt funds"); *see also id.* at 2 (email from marshal's office to Thigpen stating "[a]s discussed, closed and released since funds are exempt"). Later that day, Marshal Moses faxed a letter to Wells Fargo in which he advised the bank that it was "authorized and directed to release" Plaintiff's funds. Gutman Defs.' Exhibit 22, ECF No. 112-22. GMBS did not receive any of the funds that had been restrained. *See* Pl. Resp. to Def. 56.1 ¶ 37, ECF No. 124. On December 20, 2018, $17,522.40 was refunded to Plaintiff's account. Pl.'s Exhibit Q, ECF No. 122-17, at 8; Pl.'s Exhibit PP, ECF No. 122-42, at 1, 5.

In a letter dated January 8, 2019, Wells Fargo informed Plaintiff that it had determined that $1,562.00 of his funds in November 2018 were a "protected amount" and it placed a hold of $23,839.89 as directed by the restraining order. Pl.'s Exhibit OO, ECF No. 122-41. Since it did not receive a fax from GMBS, it cut a check to Marshal Moses for $16,570.21 and mailed it to him. *Id.* Marshal Moses never received any monies from Wells Fargo. *See* Ronald Moses Decl. dated December 11, 2023 ¶¶ 2–3, ECF No. 120-4. In response, Plaintiff sent a letter on January 24, 2019, to GMBS, Marshal Moses, and Wells Fargo in which he stated that $6,317.49 of his

---

is another proof of delivery for GMBS included but neither a date nor tracking number are visible. *Id.*

money had not been returned and that "all" of the money in his bank account was "exempt money that [he had] received for social security disability."  Pl.'s Exhibit PP, ECF No. 122-42, at 1 (emphasis omitted).  He attached a copy of his previous letters to Wells Fargo, GMBS, and Marshal Moses; the social security decision; his bank statements from July through November of 2018 and from December 2018 through January 2019; his exemption claim form; and his emails with GMBS.  *Id.*[7]  Although Wells Fargo produced a copy of the letter during discovery in this case, GMBS has no record of receiving the letter.  Keilbach Dep. at 28.

### B.    March 2019 through July 2019

Gutman Defendants admit that they do not have internal records confirming that, as they claim, they told Wells Fargo to release Plaintiff's funds in December 2018.  *See* Gutman Defs.' Resp. to Pl. 56.1 ¶ 165, ECF No. 121-2.  According to Gutman Defendants, this is because Thigpen forgot to put an entry in the message history for Plaintiff's file.  Keilbach Dep. at 21; Pl.'s Exhibit J, ECF No. 122-10, at 12 (message history showing no entry).  On March 11, 2019, Plaintiff's account was again included in a list of accounts to execute on that Brust sent to Thigpen.  Pl.'s Exhibit RR, ECF No. 122-44, at 1, 6.  The email noted that there was a restraint issued on November 16, 2018, and that Plaintiff acknowledged there was a "SSN-TAX."  *Id.* at 6.

That month, GMBS served Wells Fargo with an information subpoena and restraining notice regarding Plaintiff's bank account.  Gutman Defs.' Exhibit 26, ECF

---

[7] Plaintiff refers to the January 24, 2019 letter as his "Second Release Demand."  *See* ECF Docket Label for Exhibit PP, ECF No. 122-42.

No. 112-26, at 1. Wells Fargo returned the restraining notice to GMBS with an indication that Plaintiff's account was "under threshold." *Id.* at 2. In response to the question regarding whether Plaintiff was receiving social security, Wells Fargo wrote "N/A." *Id.* On March 14, 2019, Wells Fargo restrained $8,016.44 from Plaintiff's bank account. Pl.'s Exhibit Q, ECF No. 122-17, at 22; Pl.'s Exhibit Z, ECF No. 122-26, at 2.

On April 2, 2019, Plaintiff sent another letter to GMBS, Marshal Moses, and Wells Fargo in which he stated that $7,519.68 of his money had not been returned and that an additional $8,016.44 was garnished (with a $125 fee) and requested that the full amount ($15,661.12) be released and returned. Pl.'s Exhibit UU, ECF No. 122-47, at 1 (emphasis omitted). He attached a copy of his previous letter to Wells Fargo, the social security decision, his bank statements from July through November of 2018 and from December 2018 through January of 2019, his exemption claim form, and his emails with GMBS. *Id.*[8] Although Wells Fargo produced a copy of the letter during discovery in this case, GMBS has no record of receiving the letter. Keilbach Dep. at 28; Pl.'s Exhibit J, ECF No. 122-10, at 12–13 (file log showing no entries in April 2019 documenting receipt of letter).

On April 24, 2019, Plaintiff sent another letter to GMBS and Wells Fargo in which he again stated that $8,016.44 was garnished (with a $125 fee) and requested that the full amount ($15,661.12, with bank fees) be released and returned. Pl.'s Exhibit VV, ECF No. 122-48, at 1. He attached a copy of his previous letters to Wells

---

[8] Plaintiff refers to the April 3, 2019 letter as his "Third Release Demand." *See* ECF Docket Label for Exhibit UU, ECF No. 122-47.

Fargo, the social security decision, his bank statements from July through November of 2018, December 2018 through January 2019, and February through March of 2019, his exemption claim form, and his emails with GMBS. *Id.* at 3–63.[9]

Sometime around late April 2019, GMBS served Wells Fargo with another restraining notice regarding Plaintiff's bank account. Gutman Defs.' 56.1 ¶ 42.[10] Gutman Defs.' Exhibit 27, ECF No. 112-27. Wells Fargo returned the restraining notice to GMBS on May 1, 2019, advising GMBS that no funds were restrained since the amount in the account was "Under Threshold" and noting that there was a deposit into the account with the description "SSI TREAS 310 XXSUPP SEC ADDRESS: N/A," indicating that there were exempt Social Security funds in the account. *Id.*

On May 2, 2019, Chiantella made a note in Plaintiff's file that GMBS received Plaintiff's letter — presumably the one dated April 24, 2019 — and that Plaintiff "provided proof that all funds in his account are exempt since they are from social security." Gutman Defs.' Exhibit 28, ECF No. 112-28; Gutman Defs.' Exhibit 29, ECF No. 112-29 (GMBS's copy of Plaintiff's April 24, 2019 letter). The internal note also stated that a copy of the documents was sent to Keilbach "for review." Gutman Defs.' Exhibit 28, ECF No. 112-28. In his deposition, Keilbach said that he did not review the letter and that it was a "mistake" not to review it. Keilbach Dep. at 13, 26.

---

[9] Plaintiff refers to the April 24, 2019 letter as his "Fourth Release Demand." *See* ECF Docket Label for Exhibit VV, ECF No. 122-48.

[10] Defendants appear to have mistakenly attached the April 2018 restraining notice as the exhibit labeled as the April 2019 restraining notice.

On July 10, 2019, GMBS served Wells Fargo with another restraining notice regarding Plaintiff's bank account.  Gutman Defs.' Exhibit 33, ECF No. 112-33.  A week later, Marshal Moses's office called GMBS and told them that Plaintiff's attorney had been calling him about executing a July 10, 2019 restraining notice. Gutman Defs.' Exhibit 34, ECF No. 112-34.  That same day, July 17, 2019, Thigpen entered a note on GMBS's internal system: "Memo to Attn Eric [Keilbach] to review — should we take $ captured Wells Fargo." Pl.'s Exhibit J, ECF No. 122-10, at 15. Later that day, GMBS faxed a letter to Wells Fargo (with Keilbach's signature) requesting that the restraint on Plaintiff's account be released in full.  Gutman Defs.' Exhibit 35, ECF No. 112-35; Gutman Defs.' Exhibit 38, ECF No. 112-38; Pl.'s Exhibit J, ECF No. 122-10, at 15.  According to Plaintiff, Wells Fargo released the money back to him on July 17, 2019.  Second Amended Complaint ("SAC") ¶ 66, ECF No. 64; Pl. Resp. to Gutman Defs.' 56.1 ¶ 58, ECF No. 124.

**IV. The Instant Action and the Parties' Motions for Summary Judgment**

On July 22, 2019, Plaintiff filed the instant action against the Gutman Defendants and JD.  ECF No. 1.  He amended his complaint on April 27, 2020 (First Amended Compl. ("FAC"), ECF No. 48) and again on October 26, 2021.  SAC, ECF No. 64.  He asserts claims for violations of the FDCPA, and NYGBL § 349, as well as for common law conversion under New York against the Gutman Defendants. SAC, at 12–17.  He asserts claims for violation of EIPA, NYGBL § 349, and common law conversion against JD.  SAC, at 12–18.[11]

---

[11] Plaintiff subsequently withdrew his request for punitive damages under NYGBL Section 349(h).  ECF No. 134.

On May 11, 2020, the Gutman Defendants admitted liability for violating FDCPA Section 1692e. In a letter to the Court, the Gutman Defendants explained:

> The Gutman Defendants believe that they would, respectively, have viable defenses to Mr. Fadlevich's FDCPA claim(s) . . . and specifically and unequivocally deny any intent to mislead Plaintiff and/or otherwise violate the FDCPA, and/or engage in fraudulent or deceptive practices during the course of their conduct as legal counsel in representing its Landlord client in the enforcement and collection of a valid judgment entered against Plaintiff in a 2016 State Court litigation. Nevertheless, Defendants acknowledge and understand that FDCPA §1692e does not require a finding of "intent" in order for there to be a violation. To the contrary, a simple mistake is sufficient to trigger §1692e liability. Accordingly, in order to avoid costly and time consuming litigation over Plaintiff's FDCPA claim(s) for relief, which are the only claim(s) that provide the District Court with original subject matter jurisdiction against Defendants, Defendants will stipulate to a violation of FDCPA §1692e.

ECF No. 50 (citations omitted).

In response to Plaintiff's Second Amended Complaint, JD incorporated its Answer, Affirmative Defenses, and Cross-Claim submitted in response to Plaintiff's First Amended Complaint. ECF No. 78. In that submission, which JD served on May 11, 2020, JD asserted a crossclaim against Gutman defendants that related to indemnification:

> If JD suffers any damages or losses as a result of the facts alleged in the Amended Complaint, since such damages were not due to any wrongful negligence or fault on the part of JD but rather were due, in whole, to the wrong actions and/or inactions, fault or negligence of codefendants GMBS and/or Keilbach ("Co-Defendants"), JD is entitled to recover any such damages and losses from the Co-Defendants.

JD Answer, Affirmative Defenses, and Cross-Claim responding to First Amended Compl. ("JD Answer to FAC") ¶ 137, ECF No. 51, at 19; JD Exhibit B, ECF No. 113-

6 at 20.  In addition, in its Third, Fourth, and Sixth affirmative defenses, JD asserted

that:

> JD is the incorrect party because it is not the owner of the property
> located at 30-78 34th Street, Queens, NY 11103, which was the subject
> of the collection lawsuit.  The owner of that property is JE 34th Street
> Realty LLC.
>
> Neither GMBS nor Keilbach were acting as agents for JD in relation to
> 30-78 34th Street, Queens, NY 11103. Therefore, JD cannot be held
> vicariously liable for GMBS's and Keilbach's alleged actions.

[and]

> Plaintiff failed to name a necessary party.

JD Answer to FAC ¶¶ 126, 127, 129 (emphasis and paragraph numbers omitted); JD

Exhibit B, ECF No. 113-6 at 19 (same).  Plaintiff never moved to add JE as a party.

The Gutman Defendants moved for partial summary judgment as to the state

claims against them. Gutman Defs.' Mot. for Summ. J., ECF No. 114.  JD moved for

summary judgment on the claims Plaintiff raised against it, as well as summary

judgment in favor of its third, fourth, and sixth affirmative defenses and its first

crossclaim for indemnification against Gutman Defendants.  JD's Mot. for Summ. J.,

ECF No. 113-1, at 5.  Plaintiff moved for summary judgment on liability against JD

and Gutman Defendants. Pl.'s Mot. for Summ. J., ECF No. 118, at 5.  Gutman filed a

response in opposition to Plaintiff's motion, as well as a response to JD's motion for

summary judgment.   Gutman Defs.' Opp. to Pl.'s Mot. for Summ. J., ECF No. 121;

Gutman Defs.' Opp. to JD's Mot. for Summ. J., ECF No. 116.  JD filed a response in

opposition to Plaintiff's motion for summary judgment. JD's Opp. to Pl.'s Mot. for

Summ. J., ECF No. 128.  Plaintiff filed one motion in opposition to both Gutman

Defendants' and JD's motions for summary judgment. Pl.'s Opp. to Gutman Defs.' and JD's Mot. for Summ. J., ECF No. 123. All parties filed replies in support of their motions. JD Reply, ECF No. 131; Pl.'s Reply, ECF No. 130; Gutman Defs.' Reply, ECF No. 126.

## STANDARD OF REVIEW

"[W]hen both parties move for summary judgment, asserting the absence of any genuine issues of material fact, a court need not enter judgment for either party." *Roberts v. Genting N.Y. LLC*, 68 F.4th 81, 88 (2d Cir. 2023) (internal quotation marks omitted). "Rather, the court evaluates each party's motion on its own merits, and all reasonable inferences are drawn against the party whose motion is under consideration." *Id.* (internal quotation marks omitted).

To defeat summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *McKinney v. City of Middletown*, 49 F.4th 730, 738 (2d Cir. 2022) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "The mere existence of a scintilla of evidence in support of the [non-movant's position] will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Id.* (alteration in original) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). "Thus, rather than merely deny the moving party's allegations in a general way, the party opposing summary judgment must present competent evidence that creates a genuine issue of material fact." *Id.* (internal quotation marks omitted).

"[W]here the nonmoving party will bear the burden of proof on an issue at trial, the moving party may satisfy its burden by pointing to an absence of evidence to support an essential element of the nonmoving party's case." *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014) (alterations adopted) (internal quotation marks omitted). As such, "[a] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

## DISCUSSION

The Court will first address the parties' arguments related to Plaintiff's claims under NYGBL Section 349, addressing primarily whether Defendants' conduct was deceptive, as Plaintiff claims. The Court will then turn to the parties' arguments related to Plaintiff's common law conversion claim. Finally, the Court will address JD's motion for summary judgment on its affirmative defenses and crossclaim.

## I. NYGBL Claims

### A. Whether Section 601 precludes a claim under Section 349

As a preliminary matter, Gutman Defendants argue that Plaintiff's NYGBL Section 349 claim is a Section 601 claim — a statute that includes no private right of action — and rely on *Conboy v. AT&T Corp.* to argue that Plaintiff "'cannot circumvent' the lack of a private right of action under [Section] 601 'by claiming [that a violation of the statute] is actionable under Section 349.'" Gutman Defs. Mot. for Summ. J., ECF No. 114 at 25–26 (quoting *Conboy v. AT&T Corp.*, 241 F.3d 242, 258 (2d Cir. 2001)). NYGBL Section 601(8) provides that principal creditors and their

18

agents shall not "[c]laim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."  NYGBL § 601(8).

The plaintiffs in *Conboy* alleged that the defendants "engaged in a 'deceptive act' within the meaning of Section 349 by violating New York General Business Law § 601, which prohibits a creditor from communicating with 'the debtor or any member of his family or household with such frequency . . . to abuse or harass the debtor.'" *Conboy,* 241 F.3d at 257–58 (quoting NYGBL § 601(6)).  The Second Circuit rejected the plaintiff's argument and held that a plaintiff cannot plead a claim for violation of Section 349 by alleging that a violation of Section 601(6) necessarily constitutes a deceptive act under Section 349.  *Id.* at 258 ("In other words, plaintiffs cannot thwart legislative intent by couching a Section 601 claim as a Section 349 claim.").

Gutman Defendants rely on *Gomez v. Resurgent Capital Services*, in which a federal district court — relying on *Conboy* — granted summary judgment for defendants against the plaintiff's Section 349 claim.  Gutman Defs.' Mot. for Summ. J., ECF No. 114, at 27–28.  The *Gomez* court held that the plaintiff's Section 349 claim against defendant's conduct — which involved enforcing sewer service default judgments on time-barred debts and "robo-signing" execution paperwork — was "actually [a claim] for a violation of [Section] 601" and was therefore precluded. *Gomez v. Resurgent Cap. Services*, 129 F.Supp.3d 147, 158–59 (RWS) (S.D.N.Y. 2015). However, "[o]ther courts have found that the *Gomez* court's reading of *Conboy* is too broad" and instead interpret "*Conboy* to prohibit a claim for § 349 that is 'solely a violation of Section 601.'"  *Morales v. Kavulich & Assocs., P.C.*, 294 F. Supp. 3d 193,

197 (S.D.N.Y. 2018) (ALC) (JLC) (first quoting *Martinez v. Lvnv Funding, LLC*, No. 14-CV-00677 (RRM) (ST), 2016 WL 5719718, at *3 (E.D.N.Y. Sept. 30, 2016) and thencollecting cases). This approach is consistent with *Conroy*, in which the court, when dismissing the plaintiff's Section 349 claim, also noted that plaintiffs failed to indicate how any of the defendant's conduct was deceptive in a material way. *Conboy*, 241 F.3d at 258 ("Plaintiffs have not alleged any facts to suggest that UCS misled them; they also have not identified any statement made during any of UCS's telephone calls that was false or deceptive.").

Thus, while "[a] plaintiff may not rely on a § 601 violation to make out a *per se* violation of § 349 . . . , as many courts have held, that does not mean that conduct prohibited under § 601 may not also fall within the scope of § 349." *McCrobie v. Palisades Acquisition XVI, LLC*, 359 F. Supp. 3d 239, 253 (W.D.N.Y. 2019) (citation omitted). "Instead, courts must make an independent determination as to whether the conduct meets the § 349 standard." *Id.; see also Winslow v. Forster & Garbus, LLP*, No. 15-CV-2996 (AYS), 2017 WL 6375744, at *13 (E.D.N.Y. Dec. 13, 2017) ("[A] Section 349 claim may properly plead a claim that might also overlap with a claim under Section 601." (internal quotation marks omitted)). "The critical question for the Court to determine is whether Plaintiff has, indeed, set forth a Section 349 claim that, even if overlapping, states a claim independent of a Section 601 violation." *Id.* (citation omitted).

Accordingly, the Court will determine whether Plaintiff has provided sufficient evidence to proceed with a claim under Section 349, as that claim is not foreclosed

simply because the conduct at issue may overlap with the acts prohibited by Section 601.

### B. Whether Gutman Defendant's Conduct is Deceptive under Section 349

"To maintain a cause of action under § 349, a plaintiff must show: (1) that the defendant's conduct is consumer oriented; (2) that the defendant is engaged in a deceptive act or practice; and (3) that the plaintiff was injured by this practice." *Wilson v. Nw. Mut. Ins. Co.,* 625 F.3d 54, 64 (2d Cir. 2010) (internal quotation marks omitted). The Court will focus its analyses on the second element. As explained below, because the Court finds that the misrepresentations were not "deceptive" within the meaning of Section 349, it need not address the other elements. *See Crawford*, 758 F.3d at 486 ("[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." (quoting *Celotex Corp.*, 477 U.S. at 323)).

"Deceptive acts and practices, whether representations or omissions, are 'defined objectively as acts likely to mislead a reasonable consumer acting reasonably under the circumstances.'" *Rider v. Uphold HQ Inc.*, 657 F. Supp. 3d 491, 499 (S.D.N.Y. 2023) (DLC) (quoting *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009)); *see also Garcia v. Dezba Asset Recovery, Inc.*, 665 F. Supp. 3d 390, 411 (S.D.N.Y. 2023) (KMK) ("The allegedly deceptive acts or representations must be misleading to 'a reasonable consumer.'" (quoting *Goshen v. Mut. Life Ins. Co. of N.Y.*, 774 N.E.2d 1190, 1195 (2002)). "The reasonable consumer element may either present issues of fact or be resolved as a matter of law." *Morales*, 294 F. Supp. at

197–98; *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 124 (2d Cir. 2017) (noting that the "objective definition of deceptive acts and practices . . . may be determined as a matter of law or fact (as individual cases require)" (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 745 (N.Y. 1995)).

Plaintiff contends that the Gutman defendants violated Section 349 by (1) misrepresenting that Defendant Keilbach meaningfully reviewed the restraining notices that had his digital signature on them and (2) by falsely representing in the exemption form provided to Plaintiff that GMBS would release Plaintiff's funds. *See* Pl.'s Mot. for Summ. J., ECF No. 118, at 24–36.

### 1. *Keilbach's Digital Signature*

To begin, Plaintiff seems to imply throughout his memorandum of law that because the Gutman Defendants admitted liability for violations of the FDCPA, the Court should also find the acts deceptive under the Section 349, because conduct that is deceptive under the FDCPA's "least sophisticated consumer standard" is often also deceptive under the reasonable consumer standard. *See, e.g.*, Pl. Opp. to Gutman MSJ, ECF No. 123 at 9. Such an argument fails for two reasons. First, the Gutman Defendants have admitted to violations of Section 1692e of the FDCPA, based on what they conceded were, at least, "a simple mistake" in restraining Plaintiff's exempt funds. *See* ECF No. 50, at 2. But they have not conceded that they engaged in any deceptive acts. *See id.* at 1–2. Second, and more importantly, the standards are *not* the same, even if there is sometimes overlap. Indeed, courts have observed that the Section 349 reasonable consumer standard is "a more stringent standard

than the 'least sophisticated consumer' standard applicable to FDCPA claims."
*Michelo v. Nat'l Collegiate Student Loan Tr. 2007-2*, 419 F. Supp. 3d 668, 701
(S.D.N.Y. 2019) (PGG) (quoting *Fritz v. Resurgent Cap. Servs., LP*, 955 F. Supp. 2d
163, 174 (E.D.N.Y. 2013) (FB) (VVP)).

Under FDCPA Section 1692e, a representation is deceptive "if it is open to more
than one reasonable interpretation, at least one of which is inaccurate." *Arias v.
Gutman, Mintz, Baker & Sonnenfeldt LLP*, 875 F.3d 128, 135 (2d Cir. 2017) (internal
quotation marks omitted). Courts in this Circuit "analyze the reasonableness of an
interpretation from the perspective of the 'least sophisticated consumer,' who . . .
lacks the sophistication of the average consumer and may be naive about the law, but
is rational and possesses a rudimentary amount of information about the world." *Id.*
(citations omitted). "This is an objective standard, designed to protect all consumers,
the gullible as well as the shrewd." *Huebner v. Midland Credit Mgmt., Inc.*, 897 F.3d
42, 51 (2d Cir. 2018) (internal quotation marks omitted). However, "a false statement
is only actionable under the FDCPA if it has the potential to affect the decision-
making process of the least sophisticated [consumer]." *Bryan v. Credit Control, LLC*,
954 F.3d 576, 582 (2d Cir. 2020) (internal quotation marks omitted).

For an alleged act to be misleading under NYGBL Section 349, it "must be
likely to mislead a reasonable consumer acting reasonably under the circumstances."
*Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (internal quotation marks
omitted). "[T]he 'materially misleading' inquiry goes to the extent to which the

consumer was deceived rather than the consequences resulting from the deception." *Id.* at 301 n.10.

Plaintiff argues that it was materially deceptive for GMBS to send information subpoenas and restraining notices with Keilbach's signature digitally applied to them without Keilbach reviewing each notice before they were mailed to the banks and in turn, mailed to Plaintiff. *See* Pl.'s Mem. in Opp. to Defs.' Mots. for Summ. J., ECF No. 123, at 11–12. He argues that the signature misrepresents that Keilbach, an attorney, meaningfully reviewed the restraining notice and that "when a communication signed by an attorney is coming from a non-attorney rather than an attorney, it is materially deceptive to the reasonable consumer." *Id.* at 17. In support of his argument, Plaintiff primarily relies on cases concerning the FDCPA. But he fails to demonstrate how a reasonable consumer acting reasonably under the circumstances would be deceived in this way by the fact of an attorney's signature on a document.

For example, Plaintiff cites *Musah v. Houslanger & Associates, PLLC*, in which a court denied a judgment creditor's motion to dismiss because there was a question of fact regarding the plaintiff's claim under 15 U.S.C. § 1692e(3), which provides that "[t]he false representation or implication that any individual is an attorney or that any communication is from an attorney" is a violation of the FDCPA. Pl.'s Mem. in Opp. to Defs.' Mots. for Summ. J., ECF No. 123, at 16–17; 962 F. Supp. 2d 636, 640–41 (S.D.N.Y. 2013) (RWS); 15 U.S.C. § 1692e(3). The case involved a judgment creditor who was assigned a judgment from an original creditor and there was a

24

question as to whether Plaintiff received adequate notice of the assignment of the judgment under New York law. *Musah*, 962 F. Supp. 2d at 641; *id.* at 639 (stating that "a debtor, in order to be charged with a duty to pay a debt to an assignee, must first have actual notice of the assignment" (quoting *Tri City Roofers, Inc. v. Ne. Indus. Park*, 461 N.E.2d 298, 299 (N.Y. 1984)). The court explained that under the FDPCA, the analysis of whether there was sufficient attorney review of an information subpoena "would turn on, among other things, whether the attorney's examination of the case file was adequate to permit determination of 'whether [the debtor] was or was not obligated to pay the debt.'" *Id.* at 640–41 (emphasis omitted) (quoting *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 305 (2d Cir. 2003)). The court denied the defendant's motion to dismiss because whether there was "meaningful review" of the information subpoena from an attorney under New York law turned on whether the plaintiff actually received notice that there was an assignment of the judgment and noted that while it was "undisputed" that there was a judgment against the plaintiff, the question of whether "the [p]laintiff was or was not obligated to pay the debt, at the time that [defendant] sought to collect it," turned on whether the plaintiff actually received notice of the assignment. *Id.* at 641 (internal quotation marks omitted).

Musah is of little relevance here. As a preliminary matter, liability under FDCPA § 1692e is not at issue here because Gutman Defendants have already admitted liability under § 1692e. *See* ECF No. 50. In addition, the *Musah* court did not analyze whether the alleged lack of meaningful review would be deceptive to a

reasonable consumer acting reasonably under the circumstances under Section 349 because it was analyzing deception under a specific part of the FDCPA — one that itself was specific to representation of an attorney. But as discussed, the reasonable consumer test under Section 349 is more stringent than FDCPA's "least sophisticated consumer test." *Michelo*, 419 F. Supp. 3d at 701 . Moreover, the legal requirements surrounding the issuance of the information subpoena in *Musah* are materially different than those that relate to the restraints of Plaintiff's bank account. There, the judgment creditor had no legal right to issue the information subpoena without first giving notice of the transfer (*see Musah*, 962 F. Supp. 2d at 639), whereas here the Gutman Defendants contend — and Plaintiff does not seem to dispute — that they had a legal right to continue to issue new information subpoenas to attempt to collect on the judgment even after being notified three months earlier that at that time Plaintiff's bank account contained only exempt funds. Def. Mot. Summ. J., ECF No. 114 at 28 n.13. This is because "simply because a judgment debtor has funds in a bank account that are exempt at one particular moment in time, does not mean that at another point in the future . . . that this same bank account would still only contain non-exempt funds." *Id*. By contrast, without first providing notice to the debtor, the judgment creditor in *Musah* had *no* right to collect on the judgment.[12]

---

[12] Plaintiff also relies on *Winslow v. Forster & Garbus, LLP*, in which the plaintiff alleged that a trust initiated a state action against her and and misrepresented that it was the "original creditor" when the original creditor was in fact a bank. 2017 WL 6375744, at *3–4; Pl.'s Mem. in Opp. to Defs.' Mots. for Summ. J., ECF No. 123, at 17. The *Winslow* court held "as a matter of law," that the statement regarding the trust being the original creditor, "viewed objectively, might lead a debtor to be confused as to the nature of the debt sought to be collected and is therefore misleading within the meaning of Section 349," but did not expand on its

Plaintiff also relies on *Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP*, 875 F.3d 128 (2d Cir. 2017), another case under the FDCPA with no mention of Section 349. Pl. Mem. in Opp. to Defs.' Mots. for Summ. J., ECF No. 123, at 17. Although *Arias* involved GMBS, the Second Circuit's analysis is also unhelpful here. There, GMBS, on behalf of a landlord and property owner, initiated an action in state court alleging the plaintiff breached the lease by failing to pay rent. 875 F. 3d at 133. After GMBS obtained default judgment against the plaintiff and sought to collect on the judgment, the plaintiff claimed that all of his funds were exempt. *Id.* GMBS objected and asked the state court, in part, to find that the funds were not exempt. *Id.* The Second Circuit found that the following two statements in court filings were materially deceptive under the FDCPA's least sophisticated consumer test:

> [The plaintiff] does not provide the proper documentation in support of his Exemption Claim Form. [The plaintiff] failed to provide any bank records starting from a zero balance for [GMBS] to review to determine if [the plaintiff's] account contains solely social security. Without any of those documents, it is not possible for [GMBS] to determine what funds, if any, contained in the Bank of America account are exempt as social security[;]

and

> [e]ven if the restrained account contains social security, [the plaintiff] failed to provide any documentation that he never commingled the account with non-exempt funds.

*Id.* at 136–37. The Second Circuit explained that the plaintiff plausibly alleged that GMBS's statements misrepresented New York law because "New York's EIPA did not

---

reasoning. *Id.* at *13. In any event, the alleged misrepresentation at issue there has nothing to do with a digital signature on an information subpoena and Plaintiff does not explain why *Winslow*'s analysis is helpful here. Indeed, the pages that Plaintiff cites from *Winslow* regarding material deception relate to the court's discussion of the FDCPA. Pl. Mem. in Opp. to Defs.' Mots. for Summ. J., ECF No. 123, at 17 (citing *Winslow,* 2017 WL 6375744, at *10–12).

require [the plaintiff] to disprove commingling or to provide bank statements starting from a zero balance," and because the plaintiff's bank statements only showed social security deposits and the balance in the statements was less than the sum of the deposits. *Id.* Taking those misrepresentations together, the Second Circuit concluded that the plaintiff

> plausibly alleged that the two GMBS representations at issue had the "capacity to discourage debtors from fully availing themselves of their legal rights," by falsely suggesting that (1) the commingling of exempt and non-exempt funds renders the balance non-exempt, and (2) the consumer must disprove commingling by producing bank statements starting from a zero balance.

*Id.* at 136–37 (citation omitted) (quoting *Easterling v. Collecto, Inc.*, 692 F.3d 229, 235 (2d Cir. 2012)).

Without elaborating, Plaintiff argues that the *Arias* court "held that similar misrepresentations by GMBS were material." Pl. Mem. in Opp. to Defs.' Mots. for Summ. J., ECF No. 123, at 17. However, the misrepresentations at issue in *Arias* — misstating the law to a consumer and misrepresenting the record to a court — are quite different than Keilbach's signature digitally applied on an information subpoena. In addition, Keilbach did review the underlying judgment before the first information subpoena was issued. Keilbach Dep. at 40. Furthermore, the court's reasoning in *Arias* was specific to the FDCPA and the least sophisticated consumer test. 875 F.3d at 136 (quoting *Easterling*, 692 F.3d at 235).

In sum, Plaintiff has not demonstrated how, even viewing the record in the light most favorable to him, a reasonable consumer acting reasonably under the circumstances would see Keilbach's signature on an information subpoena sent to a

bank and be deceived into thinking that Keilbach meaningfully reviewed each information subpoena, particularly where the underlying judgment continued to be valid each time an information subpoena was sent.

2. *Promise to release exempt funds upon being provided with proof of exemption*

The information subpoenas and restraining notices that were sent to Wells Fargo, and in turn, sent to Plaintiff included an exemption claim form with the same language:

IF YOU SEND THE CREDITOR'S ATTORNEY PROOF THAT THE MONEY IN YOUR ACCOUNT IS EXEMPT, THE ATTORNEY MUST RELEASE THAT MONEY WITHIN SEVEN DAYS.

*See, e.g.*, Pl.'s Exhibit JJ, ECF No. 122-36, at 7. The language of this notice forms the basis of Plaintiff's alternate claim that Gutman Defendants engaged in deception. Specifically, Plaintiff argues that by informing him that if he sent GMBS "proof that the money in [his] account is exempt, the attorney must release that money within seven days," it misrepresented that GMBS "was legally entitled to restrain his Social Security funds despite Mr. Fadlevich providing it with an exemption claim form and bank statements." Pl. Opp. to Defs.' Mot. for Summ. J., ECF No. 123 at 14, 19.

However, as Gutman Defendants note (ECF No. 126 at 12), the statement Plaintiff challenges does nothing more than notify Plaintiff of Defendants' obligations under New York law, which requires that an exemption form inform a debtor: "If you send the creditor's attorney proof that the money in your account is exempt, the

attorney must release that money within seven days." N.Y.C.P.L.R. § 5222-a(b)(4).[13] And Plaintiff does not provide any case law to support his theory that a correct statement of the law can be a misrepresentation under Section 349.

Plaintiff has failed to provide any support (in the case law or as a matter of reasonable inference) for his claim that providing a debtor with the legally required and accurate description of his rights under New York law is deceptive within the meaning of Section 349. More fundamentally, Plaintiff has not shown how a reasonable consumer would misinterpret his rights under the law as a deceptive statement that Gutman Defendants were in fact "legally entitled" to his exempt funds, even after he provided proof of exemption.

Accordingly, because Plaintiff fails to meet the second element of Section 349, the Court grants Gutman Defendants' motion for summary judgment with respect to Plaintiff's Section 349 claims and dismisses Plaintiff's Section 349 claims against Gutman Defendants.  Because Plaintiff only claims that JD is vicariously liable for violations of Section 349, the Section 349 claims against JD are dismissed as well. *See* Pl.'s Reply, ECF No. 130, at 25–28.

## II. Conversion under New York law

As a preliminary matter, the Gutman Defendants rely on three cases to argue that Plaintiff cannot bring a claim of conversion because a special proceeding under

---

[13] "A judgment creditor restraining a bank account . . . must serve the bank with specific forms: two copies of the restraining notice, an exemption notice and two exemption claim forms. The restraint is void if the judgment creditor fails to provide these documents to the bank; in that event, the bank shall not restrain the account, nor can the bank charge fees associated with a restraint." *Cruz v. TD Bank, N.A.*, 2 N.E.3d 221, 224 (N.Y. 2013) (internal quotation marks omitted).

Article 52 is his exclusive remedy: *Plymouth Venture Partners, II, L.P. v. GTR Source, LLC* (183 N.E.3d 1185 (N.Y. 2021)), *Greene v. People's Neighborhood Bank* (141 N.Y.S. 3d 163 (N.Y. App. Div. 2021)), and *Cruz v. TD Bank, N.A.* (2 N.E.3d 221, 233 (N.Y. 2013)). Gutman Defs.' Mot. for Summ. J., ECF No. 114, at 24–25.[14] However, the *Cruz* court specifically noted that the plaintiffs "attempted to pursue various common-law tort claims that are beyond the scope of the questions certified to this Court." *Cruz v. TD Bank, N.A.*, 2 N.E.3d 221, 225 (N.Y. 2013). As a result, the court did not reach the issue. In addition, as one court in this Circuit observed, *Plymouth* "held only that a plaintiff may not use the tort of conversion to challenge a defendant's failure to comply with the procedural requirements of Article 52, and did not preclude tort liability against a defendant who retains funds after a valid judgment compels the funds' return." *Crespo v. Gutman, Mintz, Baker & Sonnenfeldt, LLP*, No. 22-CV-6599 (JPO), 2025 WL 871637, at *8 (S.D.N.Y. Mar. 20, 2025). The facts here are more like the latter, in that the Gutman Defendants continued to seek to restrain funds immediately after learning that Plaintiff's bank account had all or mostly exempt funds. Finally, to the extent Plaintiff's funds were actually garnished — and, as discussed below, there is a dispute as to whether they were — *Greene* also does not foreclose a conversion claim. *See id.* (discussing *Greene* and noting that "[w]here a defendant is alleged to have retained garnished wages following a legal order that

---

[14] Article 52 refers to the New York regulations that supply the governing procedural law for the enforcement of money judgments. See N.Y. C.P.L.R. §§ 5201–53.

31

they be returned, a conversion action is not precluded by Article 52" (collecting cases)).  Accordingly, the Court will turn to the merits of Plaintiff's conversion claim.

Under New York law, "[c]onversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." *Rapillo v. Fingerhut*, No. 09-CV-10429 (VSB), 2016 WL 11705140, at \*17 (S.D.N.Y. Sept. 14, 2016) (quoting *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 403-04 (2d Cir. 2006).  "Money may be the subject of conversion if it is specifically identifiable and there is an obligation to return it or treat it in a particular manner." *Id.* (quoting *Hoffman v. Unterberg*, 780 N.Y.S.2d 617, 619 (N.Y. App. Div 2004)); *see also Double Alpha, Inc. v. Mako Partners, L.P.*, No. 99-CV-11541, 2000 WL 1036034, at \*4 (S.D.N.Y. July 27, 2000) (dismissing conversion claim where plaintiff alleged a specific sum of money was converted but failed to "claim ownership to a specific, identifiable, segregated sum of money").  In addition, "under New York law[,] it is not generally the case . . . that bank depositors retain ownership of the funds they deposit with the bank." *United States v. PokerStars*, No. 11-CV-2564 (LBS), 2012 WL 1659177, at \*2 (S.D.N.Y. May 9, 2012).  As such, "it is only in those exceptional cases in which depositors open up a 'special' as opposed to a 'general account' that they retain ownership in the funds they deposit with the bank." *Id.* (collecting cases).

The Gutman Defendants argue that summary judgment should be granted on Plaintiff's conversion claim because Plaintiff has produced no evidence that the monies deposited were "special deposits," as opposed to "general deposits," and as a

result, any restrained funds at issue were, as a matter of law, the property of the bank. Defs.'s Mem., at 28–31. "However, the mere commingling of specifically identifiable funds with others does not destroy a claim for conversion, so long as the funds in question are 'a "specific identifiable thing" for purposes of imposing liability for conversion.'" *Crespo*, 2025 WL 871637, at *7 (quoting *LoPresti v. Terwilliger*, 126 F.3d 34, 42 (2d Cir. 1997) and citing *Kirschner v. Bennett*, 648 F. Supp. 2d 525, 540 (S.D.N.Y. 2009) ("Funds may be 'specifically identifiable' despite the fact that they are not alleged to be held in a segregated account."). "The analysis turns not 'on the nature of the account that received the funds (*i.e.,* segregated or unsegregated), but instead on whether the money at issue was a specific sum.'" *Id.* (quoting *Fam. Health Mgmt., LLC v. Rohan Devs., LLC*, 171 N.Y.S.3d 44, 48 (N.Y. App. Div. 2022)). As such, courts have found that judgment creditors can be liable for conversion where they restrained a judgment debtor's funds when they were not authorized to do so. *See, e.g.*, *id.* at *8 (denying summary judgment on conversion claim where there was a "genuine dispute of fact as to whether at any point GMBS retained the funds despite knowing it no longer had any legal basis for doing so" because "[i]f true, that constitutes conversion").

For example, in *Okyere v. Palisades Collection, LLC*, on which Plaintiff relies here (Pl.'s Opp. at 30), a court found a conversion claim viable against a Marshal and judgment creditor for improperly restraining funds after a court order vacated the judgment. 961 F. Supp. 2d 522, 533–54 (S.D.N.Y. 2013) (GWG). The Gutman Defendants argue that Plaintiff's reliance on *Okyere* is misplaced because the court

"relied on two alleged facts, not present in this action: (1) the Marshal had received $2,513.30 of the plaintiff's restrained funds from the bank and: (2) there was a Court Order vacating the Judgment against Plaintiff, that was not complied with" and contends that "here, there was no Court Order, and it is undisputed that neither Marshal Moses nor Gutman ever received money from Wells." Gutman Defs.' Opp., ECF No. 121, at 38 (citation omitted). However, the Gutman Defendants' arguments turn on facts that are actually in dispute between the parties here.

First, while Gutman Defendants may have sent information subpoenas and restraining notices on a valid judgment between December 2019 and July 2019, there is a dispute of fact as to whether they had the knowledge that, at some point during that period, all or most of Plaintiff's account contained exempt funds. To be sure, Plaintiff claims that he sent multiple letters to the Gutman Defendants in 2019; the Gutman Defendants only admit to receiving one in April 2019. *See* Gutman Defs.' Resp. to Pl. 56.1 ¶¶ 148, 165. For example, on January 24, 2019, Plaintiff sent a letter to GMBS, Marshal Moses, and Wells Fargo in which he stated that $6,317.49 of his money had not been returned and that "all" of the money in his bank account was "exempt money that [he had] received for social security disability." Pl.'s Exhibit PP, ECF No. 122-42, at 1 (emphasis omitted). He attached a copy of his previous letters to Wells Fargo, GMBS, and Marshal Moses; the social security decision; his bank statements from July through November of 2018 and from December 2018 through January 2019; his exemption claim form; and his emails with GMBS. *Id.* The Gutman Defendants deny receiving the letter. *See* Gutman Defs.' Resp. to Pl.

56.1 ¶¶ 148, 168.  Thus, the Court cannot find, as a matter of law, that the Gutman Defendants did not attempt to restrain funds they knew they had no legal basis to restrain because they knew at some point Plaintiff's bank contained all or mostly exempted funds.

Second, whether specific funds were actually restrained also relies on what appears to be another disputed material fact: whether the Marshal received any funds.  In a letter dated January 8, 2019, Wells Fargo informed Plaintiff that it had determined that $1,562.00 of his funds in November 2018 were a "protected amount" and it consequently placed a hold of $23,839.89 as directed by the restraining order.  Pl.'s Exhibit OO, ECF No. 122-41.  Since it did not receive a fax from GMBS, it cut a check to Marshal Moses for $16,570.21 and mailed it to him.  *Id.*  Plaintiff included a copy of a check addressed to Marshal Moses, but the record is not clear if the check was ever deposited.  Pl.'s Exhibit II, ECF No. 122-35.  Marshal Moses says that he never received any monies from Wells Fargo.  *See* Ronald Moses Decl. dated December 11, 2023, ECF No. 120-4, ¶¶ 2–3.

On the present record, the Court cannot find as a matter of law that the Gutman Defendants did not restrain a "specific sum" and are not liable for conversion.  On the other hand, given Moses' declaration and ambiguities surrounding what actually happened with the $16,570.21 check that was sent to Moses, the Court cannot find that Plaintiff is entitled to summary judgment on his claim that the Gutman Defendants did, in fact, restrain a "specific sum" and are liable for conversion.  From the parties' submissions, it appears these facts may be

underdeveloped.  On the other hand, the parties may agree that there is no further discovery to be had with respect to this issue and it should be resolved on the present record, either at summary judgment or at trial.

Accordingly, the parties' cross-motions for summary judgment on plaintiff's conversion claim are hereby denied without prejudice.  They shall proceed with respect to this claim as follows.  On or before April 14, 2025, the parties shall inform the Court, by joint letter, as to whether they wish to reopen discovery for the limited purpose of developing additional facts related to Plaintiff's conversion claim.  If so, they should schedule a conference with Magistrate Judge Henry.  If not, the parties shall renew their cross-motions for summary judgment on the conversion claim — through additional briefs not to exceed 10 pages — by April 28, 2025, or shall inform the Court if they wish to proceed to trial on that claim.

## III.    Defendant JD's Cross Motion for Summary Judgment

JD cross-moves for summary judgment on its affirmative defenses, its crossclaims, and on the claims against it under the EIPA.

### A. Joinder and Dismissal Under Rule 19

JD argues that JE is a necessary party to this action and failure to join JE requires dismissal under Rule 19 of the Federal Rules of Civil Procedure.  JD Mot. for Summ. J., ECF No. 113-1, at 8–9.  Rule 19 "recognizes exceptional circumstances in which a plaintiff's choice of parties . . . must give way because of an absent party's interest in the outcome of the action or involvement in the underlying dispute." *Edrich v. Festinger*, No. 12-CV-4069 (MKB), 2017 WL 3575238, at *4 (E.D.N.Y. Aug.

17, 2017) (quoting *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 132 (2d Cir. 2013)).

Rule 19(a) instructs that an absent party must be joined, if feasible, where:

> (1) in [the] person's absence, the court cannot accord complete relief among existing parties; or (2) [the] person claims an interest relating to the subject of the action and is so situated that the disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a). "The party moving for compulsory joinder has the burden of showing that joinder is appropriate." *Edrich*, 2017 WL 3575238, at *4; *see also Ravelombonjy v. Zinsou-Fatimabay*, 632 F. Supp. 3d 239, 250 (S.D.N.Y. 2022) (ER) ("[T]he burden of showing that a party is indispensable is on the moving party.").

Rule 19(b) specifies the factors a court must assess when determining whether — in the event a party who is required to be joined if feasible cannot be joined — "in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b). These factors include:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided . . . (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

*Id.*

"If a party does not qualify as necessary under Rule 19(a), then the court need not decide whether its absence warrants dismissal under Rule 19(b)." *Ray Legal Consulting Grp. v. DiJoseph*, 37 F. Supp. 3d 704, 717 (S.D.N.Y. 2014) (KPF) (citing *Viacom Int'l, Inc. v. Kearney*, 212 F.3d 721, 724 (2d Cir. 2000)). "Federal courts are

extremely reluctant to grant motions . . . based on nonjoinder and, in general, dismissal will be ordered only when the defect cannot be cured and serious prejudice or inefficiency will result." *Ravelombonjy*, 632 F. Supp. 3d at 250 (quoting *Am. Trucking Ass'n, Inc. v. N. Y. State Thruway Auth.*, 795 F.3d 351, 357 (2d Cir. 2015)).

JD does not cite any case law to support its argument that JE is an indispensable party in this action or that that the Court should dismiss the case because Plaintiff failed to add JE to this lawsuit. *See* JD Mot. for Summ. J., ECF No. 113-1, at 9. Instead, JD exclusively relies on its Third, Fourth, and Sixth affirmative defenses:

> JD is the incorrect party because it is not the owner of the property located at 30- 78 34th Street, Queens, NY 11103, which was the subject of the collection lawsuit. The owner of that property is JE 34th Street Realty LLC.

> Neither GMBS nor Keilbach were acting as agents for JD in relation to 30-78 34th Street, Queens, NY 11103. Therefore, JD cannot be held vicariously liable for GMBS's and Keilbach's alleged actions.

[and]

> Plaintiff failed to name a necessary party.

JD Exhibit B, ECF No. 113-6 at 19 (emphasis and paragraph numbers omitted); JD's Mot. for Summ. J., ECF No. 113-1, at 8–9.

Neither Gutman Defendants nor Plaintiff respond to JD's argument regarding joinder and dismissal under Rule 19. But that does not relieve JD of the need to meet its burden under Rule 19 of demonstrating that JE is indispensable and that the case should be dismissed because it was not joined. This is particularly so because while the judgment was entered in error on behalf of JD, the judgment was under JD's name.

Accordingly, JD's motion for summary judgment based on a failure to join a necessary party under Rule 19 is denied.

## B. Plaintiff's EIPA Claims against JD

Plaintiff's claims against JD under the EIPA arise under NYCPL § 5222-a(c)(4), which provides that:

> Where the executed exemption claim form sent to the judgment creditor is accompanied by information demonstrating that all funds in the account are exempt, the judgment creditor shall, within seven days of the postmark on the envelope containing the exemption claim form and accompanying information, instruct the banking institution to release the account, and the restraint shall be deemed void.

*See* SAC, ¶¶ 113–17.

JD argues that it cannot be found liable under Section 5222-a(c)(4) because it never hired GMBS to collect the judgment at issue on its behalf (it was the firm's other client, JE, who did so), GMBS never informed JD that it restrained funds in Plaintiff's Wells Fargo account, and JD resultantly never objected to Plaintiff's exemption claim. JD's Mot. for Summ. J., at 10–11. Plaintiff argues — without providing any evidentiary support — that "GMBS was the freely selected agent of JD 34th for purposes of collecting on the judgment — JD 34th bears the consequences of that freely made choice of attorney." Pl. Mem. in Opp. to Defs.' Mots. for Summ. J., ECF No. 123, at 45.

A principal — as alleged here, JD — "can be held vicariously liable for the acts of another under a theory of actual or apparent authority." *LPD N. Y., LLC v. Adidas Am., Inc.*, No. 15-CV-6360 (MKB), 2022 WL 4450999, at *8 (E.D.N.Y. Sept. 24, 2022). An agent — as alleged here, GMBS — has actual authority to act, "when the agent

receives explicit permission from the principal to act on its behalf." *United States v. Gatto*, 986 F.3d 104, 127 (2d Cir. 2021) (internal quotation marks omitted). "Such authority 'is created by direct manifestations from the principal to the agent, and the extent of the agent's actual authority is interpreted in light of all circumstances attending those manifestations, including the customs of business, the subject matter, any formal agreement between the parties, and the facts of which both parties are aware.'" *LPD N. Y.*, 2022 WL 4450999, at *8 (quoting *ABM Indus. Groups, LLC v. Int'l Union of Operating Eng'rs, Loc. 30, 30A, 30B, AFL-CIO,* 968 F.3d 158, 163 (2d Cir. 2020)).

An agent has apparent authority if it "has the ability to bind the principal to transactions with third parties because representations that the principal made to the third party make it reasonable for the third party to believe the agent has such an ability." *Id.* (quoting *Gatto*, 986 F.3d at 127). "It is the law in this circuit, as well as generally, that customarily only the representation of the principal to the third party can create apparent authority, not the representation of the agent alone." *Gatto*, 986 F.3d at 127 (internal quotation marks omitted). "To prove that an agent has apparent authority, the plaintiff must establish that '(1) the principal was responsible for the appearance of authority in the agent to conduct the transaction in question and (2) the third party reasonably relied on the representations of the agent.'" *LPD N. Y.,* 2022 WL 4450999, at *9 (quoting *Star Funding, Inc. v. Tire Ctrs., LLC*, 717 F. App'x 38, 41 (2d Cir. 2017) (summary order)).

Plaintiff cites no evidence in the record to support his claim that there was an actual or apparent principal-agent relationship when GMBS issued the information subpoenas and restraining orders on JD's behalf. Plaintiff has not shown that GMBS had "explicit permission" nor there was any representation on behalf of JD that Plaintiff relied on. Instead, Plaintiff relies on JD and GMBS's attorney-client relationship in other matters. However, that JD never instructed GMBS to collect on the judgment it was unaware of on its behalf is dispositive here and Plaintiff does not offer any support for his theory that a client can be held liable for its attorney's actions when (1) the attorney was acting outside the scope of the agreement and (2) the client was unaware of such actions. Indeed, no one at GMBS ever informed JD that Wells Fargo had restrained Plaintiff's funds on its behalf, nor did JD ever receive, or was otherwise made aware, that Plaintiff had sent GMBS an exemption form. Koutsothanasis Nov. 2023 Decl. ¶¶ 14–18.

Accordingly, given the lack of an agent-principal relationship at the time when GMBS was collecting on the incorrectly labeled judgment, JD cannot be held liable for the alleged violations of NYCPL § 5222-a(c)(4). The Court grants JD's motion for summary judgment on Plaintiff's EIPA claim.

### C. Indemnification

JD moves for summary judgment on its First Crossclaim against Gutman Defendants, which states:

> If JD suffers any damages or losses as a result of the facts alleged in the Amended Complaint, since such damages were not due to any wrongful negligence or fault on the part of JD but rather were due, in whole, to the wrong actions and/or inactions, fault or negligence of codefendants

GMBS and/or Keilbach ("Co-Defendants"), JD is entitled to recover any such damages and losses from the Co-Defendants.

JD Exhibit B, ECF No. 113-6 at 20; JD's Mot. for Summ. J., ECF No. 113-1, at 17.

JD does not offer any authority as to whether it would still be able to be indemnified under common law where there was no finding of liability for either JD or Gutman defendants. *See* JD Mot. for Summ. J., ECF No. 113-1, at 17–20. Here, the state claims have now been dismissed against both JD and Gutman Defendants and there were no FDCPA claims against JD. *See* SAC ¶¶ 80–87. As a result, it is not clear if JD's crossclaim is now moot, particularly considering that its cross claim seeks indemnification only "[i]f JD suffers any damages or losses as a result of the facts alleged in the Amended Complaint." JD Exhibit B, ECF No. 113-6 at 20. *See, e.g.*, *Nordwind v. Rowland*, No. 04-CV-9725 (LTS) (AJP), 2007 WL 2962350, at *10 (S.D.N.Y. Oct. 10, 2007), *aff'd*, 584 F.3d 420 (2d Cir. 2009) ("[B]ecause the court finds that the [plaintiffs and one third-party defendant] suffered no legally cognizable damages, the issue of indemnification is moot.").

Accordingly, JD's motion for summary judgment on its claim for indemnification is denied because JD has not shown that it is not moot.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's motion for summary judgment on its claims of liability against the Gutman Defendants and JD is denied in its entirety, and the Gutman Defendants' and JD's cross-motions are granted in part and denied in part. Plaintiff's NYGBL Section 349 claim against all defendants are DISMISSED.

Plaintiff's EIPA claim against JD is DISMISSED.  The parties should proceed as described above with regards to Plaintiff's conversion claim.

SO ORDERED.

/s/ Nina R. Morrison
NINA R. MORRISON
United States District Judge

Dated: March 31, 2025
       Brooklyn, New York