UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
**MARK FADLEVICH**

                                                    Case No.: 1:19-cv-04227-AMD-CLP

                            **Plaintiff,**

              **-against-**

**JD 34TH STREET REALTY LLC,**
**GUTMAN, MINTZ, BAKER & SONNENFELDT, LLP,**
**and**
**ERIC KEILBACH,**

                            **Defendants.**
-------------------------------------------------------------------X
~~FIRST SECOND~~ **THIRD AMENDED COMPLAINT AND JURY DEMAND**

Plaintiff Mark Fadlevich brings suit against Defendant GUTMAN, MINTZ, BAKER & SONNENFELDT, LLP, a debt collection law firm, and ERIC KEILBACH, an attorney at the firm, for their violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*., New York State General Business Law § 349, New York State Judiciary Law § 487, and for conversion, negligence *per se*, and gross negligence, and against Defendant JD 34th Street Realty LLC for conversion and violation of the New York Exempt Income Protection Act ("EIPA").

In brief, Defendants restrained and garnished Plaintiff's funds and ~~have~~ ignored the four notices over five months of indisputable documentary evidence that the funds were entirely statutorily exempt, and then two additional times garnished even more exempt funds, all for the purpose of attempting to retain funds from an exempt source and in hopes that Plaintiff, residing in Alabama and suffering from a significant disability, would not be able to do any more than protest. In total from November 21, 2018 to July 15, 2019 (236 days), Defendants restrained anywhere from $7,519.68 to $25,042.08 of Mr. Fadlevich's exempt funds, restrained despite his four written notices that the money was exempt. Even after the return of part of the first restraint by Marshal Moses on December 20, 2018, GMBS was restraining between $7,519.68 and

1

$15,661.12 for 209 days until finally releasing the money on July 17, 2019. Mr. Fadlevich is still short of $500 in exempt funds due to the bank fees caused by Defendants.

The stress from having his only source of income garnished and not having it returned after four separate attempts has made Mr. Fadlevich's condition – a disability resulting from a massive brain trauma-- worsen, increasing his seizures and migraines.

## A.   JURISDICTION AND VENUE

1.      The Court has federal question jurisdiction over the lawsuit because the action arises under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, ("FDCPA"). Jurisdiction of the Court arises under 28 U.S.C. § 1331 because this dispute involves predominant issues of federal law under the FDCPA. Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202.  The Court has supplemental jurisdiction under 28 U.S.C. §1367 over Plaintiff's state law claims because said claims are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article 3 of the United States Constitution.

2.      The Court has diversity jurisdiction under 28 U.S.C. § 1332(a) in that the matter in controversy between the Plaintiff and Defendants exceeds $75,000 and the plaintiff is a citizen of a State different than the Defendants.

3.      Venue in this District is proper because all Defendants are residents in this District. Further, the judgment sought to be executed upon was issued in Queens by the Queens County Civil Court.

## B.   PARTIES

4.      Plaintiff Mark Fadlevich is a resident of Vestavia Hills, Alabama.

Last saved 8/29/2025 7:37 PM8/29/2025 7:37 PM8/29/2025 7:15 PM

5.     Defendant Gutman, Mintz, Baker & Sonnenfeldt, LLP ("GMBS") is a limited liability partnership organized under the laws of the State of New York. GMBS' principal place of business is 813 Jericho Turnpike, New Hyde Park, NY 11040.

6.     Defendant JD 34th Street Realty LLC is a limited liability partnership organized under the laws of the State of New York.  It is a resident of Queens, NY. It was the landlord for Mr. Fadlevich's Queens residence.

7.     GMBS is a debt collection law firm, regularly filing collection lawsuits on behalf of putative creditors, collecting on putative judgments by issuing information subpoenas, bank restraints, and garnishments, sending collection letters, and making and receiving collection phone calls.

8.     GMBS regularly collects consumer debts alleged to be due to another, primarily residential rent, and that is its primary purpose.

9.     GMBS is thus a "debt collector" as defined by the FDCPA.

10.    Eric Keilbach is a partner at GMBS.  Keilbach resides in Queens, NY.

11.    Keilbach files consumer collection lawsuits on behalf of putative creditors, and collects on putative consumer judgments by issuing information subpoenas, bank restraints, and garnishments, and sending collection letters.

12.    Keilbach was personally involved in repeatedly restraining and executing on Mr. Fadlevich's exempt social security funds, and signed in information subpoenas and bank restraints to restrain and then seize Mr. Fadlevich's exempt Ssocial Ssecurity income.

13.    Keilbach is thus a "debt collector" as defined by the FDCPA.

## C.  STATEMENT OF FACTS

### *The Underlying Default Judgment Obtained Against Mr. Fadlevich*

Last saved 8/29/2025 7:37 PM8/29/2025 7:37 PM8/29/2025 7:15 PM

14.     Mr. Fadlevich resided at 30-78 34th Street, Apt. 4-F, Queens, NY 11103, in a building owned by Defendant JD 34th Street Realty LLC  ("the Landlord Defendant").

15.     In 2016, the Landlord Defendant sued Mr. Fadlevich in a breach of lease action in Queens County Civil Court ("the collection lawsuit") styled *JD 34th Street Realty LLC v. El Roy Red, et al.,* Index No. LT-058732-16/QU.

16.     On or about August 19, 2016, the Landlord Defendant obtained a default judgment for $13,785.00 against Mr. Fadlevich. *See* **Exhibit A** (Civil Court Default Judgment).

17.     More than two years later, on or about November 16, 2018, GMBS executed on the judgment on behalf of the Landlord Defendant by issuing an "Information Subpoena With Restraining Notice" ("the restraint"), to Wells Fargo where Mr. Fadlevich had a checking account ("the account") for $16,550.97. *See* **Exhibit B** (Information Subpoena and Restraint).

18.     The Information Subpoena was executed by Mr. Keilbach, and includes an affirmation of meaningful review by Mr. Keilbach. *See* **Exhibit B.**[1]

Field Code Changed

   ***The Restrained Account Was Entirely Exempt Social Security Disability For The Disability That Had Caused Mr. Fadlevich To Return To Alabama***

19.     Around the time of the lawsuit, Mr. Fadlevich had a brain aneurysm unexpectedly that led to a seizure.

20.     Since then, Mr. Fadlevich has had chronic migraines, back pain, and seizures that are debilitating enough to require frequent visits to multiple doctors and have made Mr. Fadlevich unable to hold down a steady job.

21.     Due to his condition, Mr. Fadlevich moved back to his mother's home in Alabama.

22.     On January 29, 2014, Mr. Fadlevich filed for Disability Insurance benefits and on

---

1 In full: "I HEREBY CERTIFY THAT THIS INFORMATION SUBPOENA COMPLIES WITH RULE 5224 OF THE CIVIL PRACTICE LAW AND RULES, AND SECTION 601 OF THE GENERAL BUSINESS LAW, AND THAT I HAVE A REASONABLE BELIEF THAT THE PARTY RECEIVING THIS SUBPOENA HAS IN THEIR POSSESSION INFORMATION ABOUT THE DEBTOR THAT WILL ASSIST THE CREDITOR IN COLLECTING THE JUDGMENT."

Last saved 8/29/2025 7:37 PM8/29/2025 7:37 PM8/29/2025 7:15 PM

January 6, 2015, he filed for Supplemental Security Income.

23.     Unfortunately, Mr. Fadlevich fell through the cracks in the social safety net, having his

benefits denied on April 28, 2015 despite the extreme nature of his condition.

24.     Mr. Fadlevich appealed this decision and, on December 28, 2016, the Honorable Roslynn

R. Mauskopf filed an Order in *Fadlevich v. Commissioner of Social Security*, No. 1:15-cv-06943

(RRM) in the Eastern District of New York reversing the denial and remanding the claims for

further administrative proceedings. *See* **Exhibit C** (Order in Fadlevich v. Commissioner of

Social Security).

25.     Finally, on August 21, 2018, more than three years after he first filed, the Social Security

Administration wrote Mr. Fadlevich to give him notice that it determined that Mr. Fadlevich was

entitled to around $750 a month, and thus was owed $33,626.00 for having been denied benefits

from July 2014 to June 2018. *See* **Exhibit D** (Social Security Award).

26.     Earlier, on August 3, 2019, the Social Security Administration deposited $33,626.00 into

Mr. Fadlevich's Wells Fargo checking account. *See* **Exhibit E** (Wells Fargo Bank Statement).

27.     The payment appears on the statement with the description "SSA Treas 310 Xxsoc Sec

080318 xxxxx2900A SSA Mark Hayward Fadlevich." *See* **Exhibit E**.

28.     After years of battling both his medical condition and the federal bureaucracy as a pro se

litigant, it seemed like Mr. Fadlevich would finally receive the money he was owed.

29.     Unfortunately, a few months later on November 16, 2018, GMBS issued its bank restraint

to Wells Fargo and on November 21, 2018 garnished $23,839.89 from Mr. Fadlevich's account.

30.     All of the money in Mr. Fadlevich' Wells Fargo account is SSD directly deposited by the

Social Security Administration.

31.     As such, all of the funds in the account were entirely exempt from restraint and

garnishment.

32.    The Social Security Act, 42 U.S.C. 407 (the "SSA"), states that no money paid or payable under the Act "shall be subject to execution, levy, attachment, garnishment, or other legal process."

33.    Further, the United States Department of the Treasury introduced regulations ("the regulations") that went into effect on May 1, 2011, providing that a financial institution must allow an account holder access to a "protected amount", which is the lesser of the sum of all benefit payments posted to the account in the last two months, or the balance in an account when the account review is performed. 31 CFR 212.3.

34.    However, the "protected amount" does not limit an individual's right to assert further exemptions from garnishment or restraint. 31 CFR 212.8(a).

35.    The regulations also do not preempt State laws governing garnishment practices, allowing States to further protect federal benefit payments from freezes or garnishments. 31 CFR 212.9(b).

36.    Moreover, in 2008, New York State enacted the Exempt Income Protection Act ("EIPA"), to prevent widespread problems involving the restraint of bank accounts containing exempt funds.

37.    EIPA protects statutorily exempt income from restraint, "freeze", or levy.

38.    EIPA also expedites and standardizes the process for the release of restrained exempt funds.

39.    Under EIPA, when a judgment debtor's bank account is restrained pursuant to a New York restraining notice, the judgment debtor may claim that the funds in the restrained account are exempt by completing an Exemption Claim Form.

Last saved 8/29/2025 7:37 PM8/29/2025 7:37 PM8/29/2025 7:15 PM

40.     Under EIPA, a judgment creditor must provide such an Exemption Claim Form to the judgment debtor's banking institution along with any restraining notice.

41.     An Exemption Claim Form must be mailed to the judgment debtor by her banking institution within two days of the banking institution's receipt of the restraining notice from the judgment creditor.

42.     To facilitate the prompt release of an account containing exempt funds, the Exemption Claim Form instructs judgment debtors to submit "proof" that the funds in their account are exempt. N.Y. CPLR 5222a(b)(2).

43.     Proof of an exemption can "include an award letter from the government, an annual statement from your pension, pay stubs, copies of checks, bank records showing the last two months of account activity, or other papers showing that the money in your bank account is exempt". *Id.*

44.     When a judgment debtor sends a judgment creditor an Exemption Claim Form accompanied by such "information demonstrating that all funds in the account are exempt", the restraint is deemed void and the judgment creditor must instruct the banking institution to release the account within seven days of the postmark on the envelope containing the Exemption Claim Form. N.Y. CPLR 5222a(c)(4).

45.     If the judgment creditor fails to act accordingly, the judgment creditor shall be deemed to have acted in bad faith.

46.     ~~All of the money in Mr. Fadlevich's bank account was exempt social security with, perhaps, the exception of a few hundred dollars.~~

~~47.~~46.  All of the money in Mr. Fadlevich'~~s~~ Wells Fargo account came from exempt Social

Security payments, with the exception of, perhaps, a few hundred dollars.[2]

Field Code Changed

48.47.  If a judgment debtor submits an Exemption Claim Form demonstrating that a restrained account contains exempt funds and the judgment creditor still fails to properly release the account or exempt funds, "the judgment creditor shall be deemed to have acted in bad faith and the judgment debtor may seek a court award of the damages, costs, fees and penalties" as provided for. N.Y. CPLR 5222a(c)(4).

49.48.  On December 4, 2018, Mr. Fadlevich emailed GMBS, giving notice that the money was exempt Social Security and providing screenshots of the corresponding deposits.

50.49.  On December 7, 2018, Mr. Fadlevich completed and signed an Exemption Claim Form stating, under penalty of perjury, that the money in the Wells Fargo checking account was from Social Security and was thus exempt, and mailed it along with bank statements showing that the funds were exempt Social Security to Wells Fargo. *See* **Exhibit F** (Exemption Claim Form).

51.50.  On December 11, 2018, an additional $952.19 of exempt funds were garnished.

***Mr. Fadlevich Sends An Astonishing Four Letters Over Five Months.***

***GMBS Ignores~~d~~ Every Single One,***
***And Then Garnishes~~d~~ The Account An Additional Two Times Despite Expressing Doubt About The Legality of Their Conduct.***

Formatted: Space Before: 12 pt, After: 12 pt

51.     On December 12, 2018, Mr. Fadlevich called GMBS, once again attempting to relay the exempt status of the restrained funds. Mr. Fadlevich spoke with Gary Thigpen, a GMBS employee, and informed him all deposits into the account were Social Security. Mr. Thigpen promptly noted this in GMBS's internal computer system, making an entry noting Mr.

---

[2] Even for the few hundred dollars, the first dollar out of the account is assumed to have been the non-exempt funds under the lowest intermediate balance rule, required by CPLR § 5222-a(c) (EIPA) and explained by the Second Circuit in another case against GMBS as follows: "Under the lowest intermediate balance principle, exempt funds are the last funds to leave the account. For example, if $1,000 of exempt funds and $1,000 of non-exempt funds are deposited, and then $1,000 is withdrawn, the remaining $1,000 is exempt." *Arias v. Gutman, Mintz, Baker, & Sonnenfeldt, LLP*, 875 F.3d 128, 140, fn. 2.

Formatted: Font: 10 pt
Formatted: Normal, Justified
Formatted: Font: 10 pt
Formatted: Font: TimesNewRomanPSMT, Font color: Black

Fadlevich's claim that the funds were exempt Social Security and also reading, in part, "WE MAY NEED TO RETURN." See Exhibit (Message History).

52.    Mr. Keilbach did not review or respond to this warning from Mr. Thigpen.

~~52.~~53.  On or around December 14, 2018, Mr. Fadlevich sent a letter to Wells Fargo, GMBS, and Marshal Ronald Moses, giving the parties notice that all the money garnished by GMBS was exempt Social Security deposits, that Mr. Fadlevich had filled out and send an exemption claim form, and that he had repeatedly emailed GMBS that the money was exempt. *See* **Exhibit G** (First Letter Noticing Exemption). The letter to GMBS was addressed "ATTN: Eric Keilbach, Esq." *Id.*

~~53.~~54.  On December 24, 2018, Wells Fargo sent Mr. Fadlevich a boilerplate response to this letter. *See* **Exhibit H** (First Wells Fargo Letter).

~~54.~~55.  Only Marshal Moses responded to the notice properly by reversing the portion in his control to be refunded to Mr. Fadlevich's account: $17,522.40. That left a remaining balance of $7519.68, so on or around January 24, 2019, Mr. Fadlevich sent a second letter giving notice of the remaining exempt funds that had not been returned. *See* **Exhibit I** (Second Letter Noticing Exemption). The letter to GMBS was addressed "ATTN: Eric Keilbach, Esq." *Id.*

~~55.~~56.  Meanwhile, on or around January 8, 2019, Wells Fargo sent a second letter to Mr. Fadlevich, stating that it had "identified one or more federal benefit payments" but, rather than holding all of these exempt, "establish a 'protected amount' in the amount of $1,562.00 that remained available." *See* **Exhibit J** (Second Wells Fargo Letter). Wells Fargo did outline that it had sent a check for $16,570.21 to Marshal Ronald Moses on December 13, 2018. *Id.* The remaining funds were held, and Wells Fargo directed Mr. Fadlevich to contact GMBS to have them released. *Id.*

9

56.57. At this point, GMBS had garnished exempt Social Security funds and had ignored two demands with clear evidence that it had violated the law and had no right to the money it continued to hold.

57.58. But rather than attempt to remedy its wrongdoing, GMBS doubled down.

58.59. On March 14, 2019, Wells Fargo received a second garnishment order from GMBS for $16,941.74. *See* **Exhibit K** (Third Wells Fargo Letter). Because only $13,347.44 was remaining from the first illegal garnishment, $8,016.44 was restrained. *Id.*

59.60. On April 19, 2019, Wells Fargo sent another letter, repeating what was stated in its second letter (**Exhibit L**) and also addressing the March 14, 2019 garnishment order. *See* **Exhibit L** (Fourth Wells Fargo Letter). Again, Wells Fargo directed Mr. Fadlevich to contact GMBS in order to have the funds released. *Id.*

61. On April 24, 2019, Mr. Fadlevich sent a third letter giving notice that this second garnishment was, once again, taking exempt Social Security funds. *See* **Exhibit M** (Third Letter Noticing Exemption). The letter to GMBS was addressed "ATTN: Eric Keilbach, Esq." *Id.* Mr. Fadlevich demanded the immediate release and return of, at that point, the total $15,661.12. *Id.*

62. This letter was received on or about May 2, 2019, when Gary Thigpen created an entry in GMBS's internal computer system reading "RCVD LETTER FROM DEF MARK – PROVIDED PROOF THAT ALL FUNDS IN HIS ACCOUNT ARE EXEMPT SINCE THEY ARE FROM SOCIAL SECURITY – COPY OF DOCS TO ERIC TO REVIEW." Exhibit (Message History).

63. No later than May 2, 2019, GMBS had concluded what the evidence had shown for months: all of Mr. Fadlevich's restrained funds were exempt and therefore had to be returned immediately.

64.    Nevertheless, Defendants continued to restrain Mr. Fadlevich's funds.

60.65.  Mr. Keilbach once again did not review or respond to Mr. Thigpen's warning.

61.66.  On May 22, 2019, Mr. Fadlevich sent a fourth and final letter giving notice that the funds were exempt Social Security and to release and return all $15,661.12 as well as any bank fees. *See* **Exhibit N** (Fourth Letter Noticing Exemption). The letter to GMBS was addressed "ATTN: Eric Keilbach, Esq." *Id.*

62.67.  All these letters were received by GMBS. *See* **Exhibit O** (Return Receipts for Plaintiff's Letters). GMBS has yet to give any response to Plaintiff, let alone return the funds it has illegally taken. Upon information and belief, given that all four letters (**Exhibits G, I, M, N**) are addressed to him and that he executed the information subpoena (**Exhibit B**), Mr. Keilbach has been given notice that he caused tens of thousands of dollars in exempt Social Security to be garnished, and has done nothing to remedy this violation.

63.68.  On May 31, 2019, 190 days after it had been garnished, GMBS had Wells Fargo release the $7,269.68 it was holding from the first restraint. The March 14 garnishment however was not reversed, and thus Defendants continued to restrain $8,391.44 of Mr. Fadlevich's exempt funds.

64.69.  Shockingly, even after receiving all these letters, GMBS restrained an *additional* $2,055.67 on July 15, 2019. *See* **Exhibit P** (Screenshot of July 15, 2019 withdrawal).

65.70.  On July 17, 2019, Defendants released $2,055.67 and $8,016.44.

66.71.  In sum, ~~f~~From November 21, 2018 to July 15, 2019 (236 days), Defendants restrained anywhere from $7,519.68 to $25,042.08 of his exempt funds restrained despite his four written notices that the money being restrained was exempt. Even after the return of part of the first restraint ($17,522.40) by Marshal Moses on December 20, 2018, GMBS was restraining between $7,519.68 and $15,661.12 for 209 days until finally releasing the money on July 17, 2019.

72.     Mr. Fadlevich is still short of $500 in exempt funds due to the bank fees caused by Defendants' ~~the~~ illegal restraints.

~~67.~~73.  Plaintiff incorporates by reference the facts stated in the respective 56.1 statements and supporting documents. Dkt. Nos. 119, 122, 124, 129.

***These Gross Violations Of Protected Social Security Funds Exacerbated Mr. Fadlevich's Already Difficult Financial And Health Condition***

~~68.~~74.  Prior to the garnishments, Mr. Fadlevich's condition had slowly been improving.

~~69.~~75.  Mr. Fadlevich's seizures are controlled by medication, but also through managing his emotions and stress. When the outlook for receiving his overdue Social Security funds improved, Mr. Fadlevich was able to go nine months without having a seizure.

~~70.~~76.  However, the stress due to these garnishments and the repeated unanswered efforts to get back his hard-earned Social Security funds brought back the seizures.

~~71.~~77.  As of this date, Mr. Fadlevich has had three seizures since the stress of the garnishments began.

~~72.~~78.  The seizures physically feel like falling down a flight of stairs.

~~73.~~79.  They mostly come while Mr. Fadlevich is asleep. While sleep can be a refuge for many, it is not so for Mr. Fadlevich.

~~74.~~80.  He has woken up to blood on his pillow from biting his tongue or cheek while having a seizure. The seizures also make him wet the bed.

~~75.~~81.  For days after the seizure happens, Mr. Fadlevich will see streaks of light and his brain will feel in a fog.

~~76.~~82.  The stress-induced seizures create a feedback loop as the lack of sleep increases the likelihood of having more seizures.

~~77.~~83.  Mr. Fadlevich's condition gives him chronic migraines, generally three per week.

78.84. However, the additional stress from the garnishments has given him an additional persistent headache that builds up to migraines.

79.85. Mr. Fadlevich's only source of income is the Social Security payments, so he worried about how he would financially handle any unexpected costs with his medical condition or with his mother.

### D.    COUNT # 1: VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT (AGAINST GMBS AND ERIC KEILBACH)

80.86. Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

81.87. The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e); *see also Hamilton v. United Healthcare of La., Inc.*, 310 F.3d 385, 392 (5th Cir. 2002) ("Congress, through the FDCPA, has legislatively expressed a strong public policy disfavoring dishonest, abusive, and unfair consumer debt collection practices, and clearly intended the FDCPA to have a broad remedial scope.").

82.88. Congress designed the FDCPA to be enforced primarily through private parties – such as plaintiff – acting as "private attorneys general." *See* S. Rep. No. 382, 95th Con., 1st Sess. 5, ("[t]he committee views this legislation as primarily self-enforcing; consumers who have been subject to debt collection abuses will be enforcing compliance"); and *Jacobson v. Healthcare Fin. Servs.*, 516 F.3d 85, 91 (2d Cir. 2008) ("[i]n this way, the FDCPA enlists the efforts of sophisticated consumers like [plaintiff] as 'private attorneys general' to aid their less sophisticated counterparts, who are unlikely to bring suit themselves to bring suit under the Act, but who are

13

assumed by the Act to benefit from the deterrent effect of civil actions brought by others.").

~~83.~~89.  The obligation alleged to be owed by plaintiff is a "debt" as defined by 15 U.S.C. § 1692a(5) because the putative debt was incurred primarily for family, personal or household purposes, specifically for rent.

~~84.~~90.  Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3) because Plaintiff was alleged to owe a "debt."

~~85.~~91.  GMBS is a law firm, and Eric Keilbach is a senior partner at this law firm, engaged in the business of collecting debts by filing thousands of collection lawsuits on behalf of putative creditors or debt buyers; by making thousands of collection phone calls; and by sending out thousands of collection letters. GMBS regularly collects consumer debts alleged to be due to another, and that is its primary purpose. GMBS is a "debt collector" as defined by the FDCPA, 15 U.S.C. §1692a(6).

~~86.~~92.  The actions of GMBS and Mr. Keilbach enumerated in the above statement of facts constitute an attempt to collect a debt, or were taken in connection with an attempt to collect a debt, within the meaning of the FDCPA.

~~87.~~93.  GMBS and Mr. Keilbach materially violated the following sections of the FDCPA: 15 U.S.C. §§ 1692e and 1692f. By way of example and not limitation, GMBS violated the FDCPA by taking the following actions in an attempt to collect a debt or in connection with an attempt to collect a debt: using false, deceptive or misleading representations or means; misrepresenting the character, amount, or legal status of the debt; misrepresenting the services rendered or compensation which may be lawfully received; threatening to take and actually taking an action prohibited by law; using any false, deceptive or misleading representations or means; using unfair or unconscionable means; collecting or seeking to collect any amount (including any

Last saved 8/29/2025 7:37 PM~~8/29/2025 7:37 PM~~~~8/29/2025 7:15 PM~~

interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law; and taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if the property is exempt by law from such dispossession or disablement.

### E.    COUNT 2: NEW YORK GENERAL BUSINESS LAW SECTION 349 *ET SEQ.* (AGAINST ALL DEFENDANTS)

88.94.  Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

89.95.  New York General Business Law Section 349(a) prohibits "deceptive acts or practices in the conduct of any business, trade, or commerce, or in the furnishing of any service in this state…"

90.96.  N.Y. Gen. Bus. Law § 349 *et seq.* is a strict liability statute, and thus there is liability regardless of whether it can be established that Defendants' actions were intentional.

91.97.  An individual "injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such action." N.Y. Gen. Bus. Law § 349(h). An individual may also be awarded punitive damages.

92.98.  As enumerated above, Defendants GMBS and Eric Keilbach violated N.Y. Gen. Bus. Law § 349 *et seq.* by using deceptive acts and practices in the conduct of their businesses that have broad impact on consumers at large. This includes: seeking to collect on a judgment by restraining an account (or garnishing wages) without performing any review, much less a meaningful attorney review, of  whether the account sought to be restrained contains exempt funds, even after receiving a lawful notice of exemption.

93.99.  On information and belief, GMBS routinely opposes lawful claims of exemption by New

Last saved 8/29/2025 7:37 PM8/29/2025 7:37 PM8/29/2025 7:15 PM

York consumers, even after receiving notices of exemption (*see e.g. Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP*, 875 F.3d 128, 138 (2d Cir. 2017))—opposing such exemption claims without performing any review, much less meaningful attorney reviews, of whether the claims of exemption are valid.

94.100.     In the alternative, GMBS routinely opposes exemption claims knowing that there is no reasonable basis for the challenge in hopes of coercing payments from the exempt account or that the consumer would default on the hearing date.

95.101.     It appears that post-*Arias* GMBS, rather than complying with lawful claims of exemption, is continuing to oppose them by simply ignoring them. Opposition by noncompliance is just as willfully deceptive when done through ignoring lawful exemption claims as when done through court filings as in *Arias*.

96.102.     Further, as enumerated above, GMBS and Mr. Keilbach violated N.Y. Gen. Bus. Law § 349 *et seq.* by using deceptive acts and practices in the conduct of their businesses.  This includes attempting to restrain and levy funds GMBS and Mr. Keilbach knew or should have known to be exempt, and making false statements of law and fact to the Plaintiff.

97.103.     GMBS' conduct has had an impact on many New Yorkers who have their income exemption claims objected to as a matter of course by GMBS.

98.104.     GMBS and Mr. Keilbach committed the above described acts willfully and/or knowingly.

99.105.     For the following reasons, among others, GMBS' and Mr. Keilbach's conduct evidences a high degree of moral culpability, or is so flagrant as to transcend mere carelessness, or constitutes willful or wanton negligence or recklessness to justify a punitive damage award. As already indicated, GMBS and Mr. Keilbach collected upon the putative judgment by

restraining an account without performing any review, much less a meaningful attorney review, of whether the account sought to be restrained contained exempt funds, even after receiving a lawful notice of exemption that was plainly sufficient to release the account; and refusing to act on such lawful claim of exemption as a matter of course without performing any review, much less a meaningful attorney review, whether the claim of exemption was valid.

~~100.~~106.    GMBS' and Mr. Keilbach's wrongful and deceptive acts caused injury and damages to Plaintiff.

~~101.~~107.    The Landlord Defendant is directly liable as the judgment creditor and is vicariously liable for the acts of GMBS.

~~102.~~108.    As a direct and proximate result of those violations of N.Y. Gen. Bus. Law § 349 *et seq*, Plaintiff suffered compensable harm and is entitled to preliminary and permanent injunctive relief against GMBS, and to recover actual, treble, and punitive damages, together with costs and attorney's fees.

## F.    COUNT    3:    CONVERSION    (AGAINST    ALL DEFENDANTS)

~~103.~~109.    Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

~~104.~~110.    Defendants are jointly and severally liable for conversion. The Landlord Defendant, as the party in the collection lawsuit, acted through its agents, GMBS and Eric Keilbach, in converting Mr. Fadlevich's money.  GMBS and Mr. Keilbach were acting within the course and scope of the authority given to them by the Landlord Defendant.  For purposes of the conversion claim, the acts of GMBS and Mr. Keilbach are the actions of the Landlord Defendant.

17

105.111.        The elements of conversion in New York State include: 1) having a possessory interest in property; and 2) having the possessory interest taken or interfered with by another in a manner that is contrary to the possessor's rights.

106.112.        Property subject to conversion includes readily identifiable funds from a bank account.

107.113.        Defendants intentionally and without authority, assumed and exercised control over Mr. Fadlevich's funds, interfering with his right to possession of the same, by restraining his account; and the exempt funds therein.

108.114.        Defendants' improper restraint of Mr. Fadlevich's money, which harmfully interfered with Mr. Fadlevich's rights to control his own property, constitutes conversion.

109.115.        For the reasons stated in the statement of facts, and under Counts 1 and 2, Defendants' conduct is gross, wanton or deliberate and demonstrates a high degree of moral culpability. The conduct demonstrates malice, insult, and/or willful or reckless disregard of Mr. Fadlevich's rights, or other aggravated acts. Defendants' conduct evidences a high degree of moral culpability, or is so flagrant as to transcend mere carelessness, or constitutes willful or wanton negligence or recklessness to justify a punitive damage award.

110.116.        For these reasons, Plaintiff is entitled to punitive damages, in addition to actual damages. Actual damages include, *inter alia*, the loss of use of money for the period Defendants wrongfully exercised dominion and control over Plaintiff's funds, and consequential damages resulting therefrom. Plaintiff suffered serious mental distress and disruption of his daily life.

111.117.        The Landlord Defendant is directly liable as the judgment creditor and is vicariously liable for the acts of GMBS.

### G.    COUNTS 4 AND 5: NEGLIGENCE *PER SE* AND GROSS NEGLIGENCE (AGAINST ~~ALL DEFENDANTS~~GMBS)

118.    Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

119.    By way of example and not limitation, the negligence *per se* and gross negligence of GMBS consisted, *inter alia*, continuing the restraint of Mr. Fadlevich's exempt funds after receiving notice that the funds were exempt and ignoring their own internally-expressed doubts as to the legality of the restraints placed on Mr. Fadlevich's account.

120.    The elements of negligence *per se* are 1) that a defendant had a duty under statute or common law; 2) that that statute was intended to protect a class of persons such as the plaintiff; 3) that the defendant actually violated the statute; and 4) that the plaintiff has damages flowing from the violation of the statute in question.

121.    GMBS had a duty to Mr. Fadlevich. GMBS had a statutory duty to Mr. Fadlevich not to violate the FDCPA and a common law duty in the collection of putative debts. Mr. Fadlevich, as a putative debtor, falls within the class of persons to be protected by those duties.

122.    GMBS violated these duties on many ways in the ways outlined in the Statement of Facts, but just to give three examples:

   a.    15 U.S.C. § 1692f prohibits a debt collector from using "unfair or unconscionable means" to collect or attempt to collect any debt. For example, GMBS continued to restrain of Mr. Fadlevich's exempt funds after receiving notice that the funds were exempt and ignoring their own internally-expressed doubts as to the legality of the restraints placed on Mr. Fadlevich's account.

   b.    15 U.S.C. § 1692e(5) prohibits "the threat to take any action that cannot legally be

taken,." and the Second Circuit has defined the scope of the prohibition to include actually taking acts prohibited by law. *Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP*, 875 F.3d 128, 138 (2d Cir. 2017). As federal and state law prohibited the restraint of Mr. Fadlevich's social security funds, GMBS violated this provision (as well as 1692(f)) in doing so, and certainly continuing to do this for seven months.

> c. 15 U.S.C. § 1692e(10) prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt." GMBS violated this provision by repeatedly restraining and continuing to restrain Mr. Fadlevich's social security disability money for months impliedly representing to Mr. Fadlevich they had a lawful right to do so.

123.   By unlawfully restraining and refusing for months to return Mr. Fadlevich's clearly exempt funds, in spite of the expressed doubts of an experienced debt collector, Gary Thigpen, as to the legality of the restraints, Defendants violated their duty of reasonable care to avoid violations of the FDCPA.

124.   To the degree they may be mutually exclusive to each other or to other claims in this suit, the negligence *per se* and gross negligence claims are brought in the alternative.

125.   When considering claims for gross negligence, courts consider the following additional factors. GMBS violated these additional elements as to Mr. Fadlevich in a similar manner as they did in the parallel *Crespo* suit:

> Defendants' actions evince a reckless disregard for the rights of Mr. Crespo and others. The actions have the appearance of intentional wrongdoing. Defendants' conduct was part of a broader pattern of misconduct aimed at the public in general. Defendants' conduct demonstrates a high degree of moral culpability and willful or wanton negligence or recklessness. As a result, Mr. Crespo is entitled to a punitive damage award

*Crespo v. Gutman, Mintz, Baker & Sonnenfeldt, LLP*, No. 22-CV-6599 (JPO), 2025 WL 871637, at \*9 (S.D.N.Y. Mar. 20, 2025)

126.    Intentional misrepresentation of a consumer's legal rights was recently held to state a claim for gross negligence in *Crespo v. Gutman, Mintz, Baker & Sonnenfeldt* (2025 WL 871637 at \*9, S.D.N.Y.)—another case against Defendants GMBS and Keilbach.  In *Crespo*, a representation that allowed a claim for punitive damages for gross negligence to go to the jury is the collector (allegedly) telling a consumer who bank account GMBS restrained and which in fact contained exempt funds, was the "only way" to have the funds released would be to sign a release of some of the money to GMBS. *Id.*

127.    "Internal records questioning the legality of [a debt collector's] own conduct" was also held in *Crespo* to state a claim for gross negligence as it "raises the triable inference that GMBS knew it was acting in disregard of [Plaintiff's] rights." *Id.*

128.    Such records are present in this case as they were in *Crespo*, in the form of the internal notations made on December 12, 2018 and May 2, 2018, in each instance expressing clear doubt about the legality of the restraint against Mr. Fadlevich's funds.

129.    As the Court in the instant case has noted in its' Summary Judgment Order (Dkt. No. 135), Mr. Fadlevich mailed the Gutman Defendants packets of documents on four different occasions over a period of six months (two of which the Gutman Defendants admit receiving), with bank statements demonstrating that funds were exempt and a letter from Wells Fargo stating it would not release the account absent a letter from the Gutman Defendants. *Id.* Yet Gutman Defendants took no action to release the account and, instead, continued to send bank restraints which, in some instances, made even more money inaccessible to Mr. Fadlevich. *Fadlevich v. JD 34th St. Realty LLC*, 775 F. Supp. 3d 668, 679-681 (E.D.N.Y. 2025) In response to the April 24,

2018 the packets sent by Mr. Fadlevich, on May 2, 2019 a collector noted internally that Fadlevich "provided proof that all funds in his account are exempt since they are from social security," and that he had provided that information to Keilbach. *Id*., 775 F. Supp. 3d at 680. Yet Keilbach and the firm did nothing to release the funds or cease sending additional restraints. The Gutman Defendants only issued a full release of the restrained funds on July 17, 2019, more than seven months after they admit first receiving documentary evidence that all of the money in the account was exempt.  And the only reason they finally released the money is that the Marshal told the Gutman Defendants that the undersigned – an attorney who sued the Gutman Defendants several times prior – had contacted him regarding a July 10, 2019 bank restraint. *Id*. 775 F. Supp. at 681. In other words, the Gutman Defendants ignored evidence for months from a disabled consumer, but leaped into action within minutes of learning they may be sued.

130.    GMBS's conduct demonstrates a high degree of moral culpability and willful or wanton negligence or recklessness. As a result, Mr. Fadlevich is entitled to a punitive damage award.

### ~~G.~~H.    COUNT ~~6~~4: EIPA (AGAINST JD 34th STREET REALTY)

~~112.~~118.    Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

~~113.~~119.    Under N.Y. Civil Practice Law and Rules § 5222-a(c)(4), when an executed exemption claim form sent to a judgment creditor is accompanied by information demonstrating that all the funds in the account are exempt, the judgment creditor is required to, within seven days, instruct the bank to release the account and deem the restraint void.

~~114.~~120.    Failure to comply with this provision deems the judgment creditor to be in bad faith and subject to EIPA's penalties for such bad faith.

~~115.~~121.    Under CVP § 5222-a(g), the judgment debtor shall be awarded costs, reasonable attorney fees, actual damages and statutory damages of $1,000 for these violations.

116.122.        JD 34th Street Realty failed to, either directly or through its attorney GMBS, instruct Wells Fargo to release the account upon receiving the executed exemption claim form from Mark Fadlevich with the attached notice of Social Security benefits and other documents evincing that the funds garnished were exempt Social Security.

117.123.        Thus under EIPA JD 34th Street Realty's conduct should be deemed in bad faith and it should be found to have violated EIPA.

### H.I.    JURY DEMAND

118.124.        Plaintiff demands a trial by jury.

### I.J.    PRAYER

119.125.        WHEREFORE, Plaintiff requests the following relief:

a.    A declaration that Defendants have committed the violations of law alleged in this action;

b.    An order enjoining and directing GMBS to cease violating G.B.L. § 349 *et seq.*;

c.    Actual damages;

d.    Statutory damages under 15 U.S.C. § 1692k, GBL § 349, and EIPA;

e.    Exemplary and punitive damages under GBL § 349, and for conversion and gross negligence;

f.    An order awarding disbursements, costs, and attorneys' fees under 15 U.S.C. § 1692k, GBL § 349, and EIPA;

g.    Prejudgment and post judgment interest as allowed by law;

h.    All other relief, in law and in equity, both special and general, to which Plaintiff may be justly entitled.

Dated:  Brooklyn, New York
        August 29, 2025

Respectfully submitted,

23

/s/

Ahmad Keshavarz
The Law Office of Ahmad Keshavarz
16 Court St., 26th Floor
Brooklyn, NY 11241-1026
Phone: (718) 522-7900
Fax:    (877) 496-7809
Email: ahmad@NewYorkConsumerAttorney.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this day I served the above referenced document to the parties listed below via ECF to:

Arthur G. Jakoby
~~Jina Moon~~
Herrick, Feinstein LLP
*Attorneys for JD 34th Street Realty LLC*
Two Park Avenue
New York, NY 10016
ajakoby@herrick.com
~~JMoon@herrick.com~~

Ken Novikoff
Rivkin Radler
926 RXR Plaza
Uniondale, NY 11556-0926
Ken.Novikoff@rivkin.com

Date:  August 29, 2025
        Brooklyn, NY
/s/
Ahmad Keshavarz
Attorney for Plaintiff

Last saved 8/29/2025 7:37 PM8/29/2025 7:37 PM8/29/2025 7:15 PM